# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CP-00843-COA

EDMOND QUINTEZES MOSLEY A/K/A EDWIN
MOSLEY A/K/A EDMOUND Q. MOSLEY A/K/A
EDMOUND QUINTEZES MOSLEY A/K/A
EDMOND MOSLEY A/K/A EDMOUND
QUINTEZ MOSLEY

APPELLANT

v.

STATE OF MISSISSIPPI                                                    APPELLEE

DATE OF JUDGMENT:            04/19/2013
TRIAL JUDGE:                 HON. LESTER F. WILLIAMSON JR.
COURT FROM WHICH APPEALED:   LAUDERDALE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      EDMOND QUINTEZES MOSLEY (PRO SE)
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: SCOTT STUART
NATURE OF THE CASE:          CIVIL - POST-CONVICTION RELIEF
TRIAL COURT DISPOSITION:     DENIED MOTION FOR POST-
                             CONVICTION RELIEF
DISPOSITION:                 AFFIRMED - 10/28/2014
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE LEE, C.J., ISHEE AND JAMES, JJ.

### JAMES, J., FOR THE COURT:

¶1.     Edmond Quintezes Mosley pled guilty in Lauderdale County Circuit Court to two counts of armed robbery, each count arising from a separate incident. Mosley was sentenced to serve forty years in the custody of the Mississippi Department of Corrections (MDOC) on each count, with the sentences to run concurrently. Mosley filed a motion to vacate and set aside his guilty plea, which the trial court treated as a petition for post-conviction relief

(PCR), and denied. Mosley now appeals. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On March 26, 2011, a Lauderdale County grand jury returned two indictments charging Mosley with armed robbery. The first indictment, cause number 157-11, charged Mosley with armed robbery stemming from his participation in the November 16, 2010 armed robbery of Linda Edwards, doing business as Hodgepodge by Linda, and its employee, Mary Gibson. The second indictment, cause number 155-11, charged Mosley with armed robbery stemming from his participation in the November 19, 2010 armed robbery of Nan Casciaro, doing business as Antique Mall. In each case, Mosley was indicted as a habitual offender.

¶3.     Mosley was also indicted for four additional felonies during the March 2011 term of the Lauderdale County grand jury: burglary of a building or other dwelling, armed robbery, and two separate counts of burglary of an automobile. On August 1, 2011, less than one month before Mosley's trial date, Mosley was indicted for a seventh felony: grand larceny. In all seven indictments, Mosley was indicted as a habitual offender.[1]

¶4.     As part of a plea negotiation with the State, five indictments were dismissed in exchange for Mosley's guilty pleas to armed robbery in cause numbers 155-11 and 157-11. On August 22, 2011, Mosley pled guilty to the two armed robberies and was sentenced to

---

[1] The record indicates that Mosley was indicted for seven felony offenses in seven separate cause numbers: armed robbery, cause number 157-11; armed robbery, cause number 155-11; armed robbery, cause number 156-11; burglary of a building other than a dwelling, cause number 112-11; burglary of an automobile cause number, 139-11; burglary of an automobile, cause number 189-11; and grand larceny, cause number 315-11.

2

forty years in the custody of the MDOC on each count of armed robbery, with the sentences to run concurrently.

¶5.     On March 7, 2012, Mosley filed a motion to vacate and set aside his guilty plea, which the trial court treated as a PCR petition and denied. Mosley now appeals, raising the following issues: (1) whether Mosley was denied effective assistance of counsel; (2) whether Mosley's plea was voluntary and whether the trial court erred in denying Mosley's petition without first conducting an evidentiary hearing. Finding no error, we affirm.

## STANDARD OF REVIEW

¶6.     "When reviewing a trial court's denial or dismissal of a PCR motion, we will only disturb the trial court's factual findings if they are clearly erroneous; however, we review the trial court's legal conclusions under a de novo standard of review." *Purnell v. State*, 126 So. 3d 949, 951 (¶4) (Miss. Ct. App. 2013) (quoting *Hughes v. State*, 106 So. 3d 836, 838 (¶4) (Miss. Ct. App. 2012)).

## DISCUSSION

¶7.     We first note, as did the trial court, that Mosley's petition fails to comply with the procedural requirements of the Uniform Post-Conviction Collateral Relief Act (UPCCRA). Here, the trial court properly treated Mosley's motion to vacate and set aside his guilty plea as a PCR petition pursuant to the UPCCRA. *See Barrett v. State*, 119 So. 3d 396, 398 (¶7) (Miss. Ct. App. 2013) ("Pleadings that are cognizable under the UPCCRA will be treated as PCR motions that are subject to the procedural rules promulgated therein, regardless of how the plaintiff has denominated or characterized the pleadings" (citation and internal quotation marks omitted)). Mississippi Code Annotated section 99-39-9(2) (Supp. 2014) provides: "A

3

[PCR petition] shall be limited to the assertion of a claim for relief against one (1) judgment only. If a petitioner desires to attack the validity of other judgments under which he is in custody, he shall do so by separate motions." Thus, "a separate motion for [PCR] must be filed for each cause number or conviction." *Rigdon v. State*, 126 So. 3d 931, 934 (¶6) (Miss. Ct. App. 2013) (quoting *Bell v. State*, 2 So. 3d 747, 749 (¶5) (Miss. Ct. App. 2009)). "This rule applies even when, as [here], the multiple convictions were imposed in the same plea hearing and sentencing order." *Id. See also Hundley v. State*, 803 So. 2d 1225, 1229 (¶9) (Miss. Ct. App. 2001) (noting that section 99-39-9(2) requires separate PCR petitions to attack guilty pleas in two different cause numbers, even though the pleas were taken in the same hearing).

¶8. Mosley's PCR petition stated that his petition stemmed from his guilty plea and conviction on August 22, 2011, for the offense of armed robbery in which the trial court sentenced him to serve a term of forty years in the custody of the MDOC. Nowhere in the petition does Mosley specifically identify the proceeding by cause number or reference facts necessary to identify a particular cause number. Thus, it would have been proper for the trial court to dismiss Mosley's petition on that basis alone. Nevertheless, we address the merits of Mosley's claims.

**I.     Whether Mosley was denied effective assistance of counsel.**

¶9. Mosley first argues that his trial counsel failed to effectively represent him and that a coercive conversation took place with his attorney in which Mosley's attorney "crossed the line" in advising him to plead guilty.

¶10. "There is a strong but rebuttable presumption that trial counsel was competent and that

4

trial counsel performed within the wide range of reasonable conduct expected from counsel." *Pruitt v. State*, 53 So. 3d 24, 27 (¶14) (Miss. Ct. App. 2010) (citing *Busby v. State*, 994 So. 2d 225, 227 (¶8) (Miss. Ct. App. 2008)). In order to rebut this presumption, Mosley must show that: "(1) his trial counsel's performance was deficient, and (2) the trial counsel's deficiency prejudiced his defense." *Id.* In order to challenge his guilty plea on the ground of ineffective assistance of counsel, Mosley must demonstrate that "counsel's errors proximately resulted in the guilty plea and, but for counsel's errors, he would not have entered the guilty plea." *Deloach v. State*, 937 So. 2d 1010, 1011 (¶5) (Miss. Ct. App. 2006) (citing *Reynolds v. State*, 521 So. 2d 914, 918 (Miss. 1988)).

¶11. Mosley claims that his trial counsel used coercive tactics in convincing Mosley to plead guilty, asserting:

> Any counsel place[d] in the same position . . . would have advised [Mosley] to exhaust his constitutional rights to trial, . . . [rather] than plea [sic] guilty to a [forty-]year . . . sentence that is beyond the conscience of humanly trying to complete. [Mosley] states that he has supporting affidavits to collaborate [sic] [his] claims that a coercive conversation had taken place between . . . [Mosley's attorney,] . . . [Mosley,] and members of [Mosley's] family that really crossed the line when advising your client to accept a plea bargain.

¶12. In his affidavit, Mosley stated that his attorney was mad at him on his trial date, subsequent to his plea hearing, because Mosley was indicted on an additional charge that caused the State to withdraw a previous plea deal.[2] In support of his claim, Mosley provided affidavits from two family members, both of whom claimed that Mosley's attorney told Mosley that if he did not accept the plea offer of a forty-year sentence, Mosley could face life

---

[2] The record reflects that twenty days before Mosley's trial date, Mosley was indicted for grand larceny in cause number 315-11.

in prison. However, Mosley's affidavit and the affidavits of his family members merely demonstrate that prior to the trial date, Mosley's attorney advised Mosley not to accept the plea of forty years; however, the day of the hearing, Mosley's attorney changed course, advising Mosley to take the plea in light of the latest indictment, which brought Mosley's total number of felony indictments to seven. There is nothing in the record indicating that Mosley's attorney did anything but correctly inform Mosley that he could face life in prison if he chose to exercise his rights to a jury trial and was subsequently convicted.

¶13. As to the alleged "threats," Rule 8.04(B)(3) of the Uniform Rules of Circuit and County Court provides in part that: "Defense attorneys must advise [the] defendant of all pertinent matters bearing on the choice of plea, including likely results or alternatives." It is apparent that Mosley's attorney did not "threaten" or "coerce" Mosley into pleading guilty, but properly advised Mosley of the possible sentence he faced if Mosley did not accept the State's plea bargain. Mosley's attorney would have been in error if he had failed to advise Mosley of the sentence that he faced if convicted by a jury.

¶14. We find no evidence that Mosley's attorney's performance was deficient, or if so, that Mosley suffered any prejudice. Accordingly, this issue is without merit.

II. **Whether Mosley's plea was voluntary and whether the trial court erred in denying Mosley's petition without first conducting an evidentiary hearing.**

¶15. Mosley submits several arguments challenging the voluntariness of his guilty plea. Mosley first argues that his plea was involuntary. Mosley also asserts that the trial court failed to find a factual basis for his guilty plea. Finally, Mosley argues that he was misinformed by the trial court regarding his parole eligibility and, therefore, the trial court

erred in denying his PCR petition without first holding an evidentiary hearing. We address each argument in turn.

## A. Voluntariness

¶16. Mosley claims that he had "every intention of pursuing his right to a trial" and that he had a "firm expectation that [he] would go before the court and accept a plea [bargain] for a lesser sentence than actually imposed by the court."

¶17. "A guilty plea is binding if entered voluntarily, knowingly, and intelligently." *Woods v. State*, 71 So. 3d 1241, 1244 (¶8) (Miss. Ct. App. 2011). This standard is met if "the defendant is advised concerning the nature of the charge against him and the consequences of the plea." *Mason v. State*, 42 So. 3d 629, 632 (¶7) (Miss. Ct. App. 2010) (quoting *Alexander v. State*, 605 So. 2d 1170, 1172 (Miss. 1992)). Similarly, "[t]he defendant must be told that [his] guilty plea waives several constitutional rights[,] including [his] right to trial by jury, the right to confront adverse witnesses[,] and the right to protection against self-incrimination." *Hannah v. State*, 943 So. 2d 20, 25 (¶12) (Miss. 2006). "Solemn declarations in open court carry a strong presumption of verity." *Mason*, 42 So. 3d at 632 (¶7) (quoting *Baker v. State*, 358 So. 2d 401, 403 (Miss. 1978)). Finally, "[t]he PCR movant has the burden to show by a preponderance of the evidence that his plea was involuntary." *Woods*, 71 So. 3d at 1244 (¶8) (citing *Sayles v. State*, 35 So. 3d 567, 569 (¶7) (Miss. Ct. App. 2010)).

¶18. A review of the transcript of Mosley's plea hearing shows that the trial court advised Mosley concerning the nature of the charges against him and the consequences of the plea. During the hearing, the following exchange between Mosley and the trial court took place

7

in open court:

[Court]: Previously, . . . you had entered [a plea] of not guilty. When you enter a plea of not guilty in felony cases like this, you've got rights. Those rights include the right to a speedy and public trial by jury; the right to see, hear[,] and confront[,] in open court[,] witnesses that would testify against you. You have the right to use the power and process of the court to compel witnesses . . . to testify in your defense. You have the right to the assistance of your lawyer . . . at each stage of trial proceeding. At trial, you'd have the presumption of innocence . . . . [, and] the State would have the burden of proving beyond a reasonable doubt the elements of the armed[-]robbery charges that are pending against you. At trial, you could testify; or if you chose not to . . . you'd have the right to remain silent . . . [, and] I'd instruct the jury [that] they can't hold [that] fact . . . against you in determining your guilt or innocence. Finally, if you have a trial and you're found guilty, you'd have a right to appeal that conviction with the assistance of your lawyers to the Mississippi Supreme Court. But when you change your plea . . . from not guilty to guilty . . . you're waiving or giving up those rights. You understand those rights, Mr. Mosley?

[Mosley]: Yes, sir.

[Court]: And in each case of armed robbery, you're waiving those rights and proceeding on with your plea of guilty?

[Mosley]: Yes, sir.

. . . .

[Court]: As we've discussed, on armed robbery on each count, you can get three years up to life if set by the jury. You could get up to a $10,000 fine . . . . Now, as I understand it, in your cases, Mr. Mosley, that if I accept your pleas of guilty in the two cases that we've talked about[,] the State's going to agree to dismiss several other pending indictments against you. They include the indictment[s] in cause number[s] 156-11, 112-11, 139-11, 189-11[,] and 315-11.

. . . .

8

[Court]:      And if I accept your plea of guilty in [the two armed robberies,] then in both cases, there would be concurrent time, you know, just you're serving both sentences at the same time.

[Mosley]:     Yes, sir.

[Court]:      But in each case, there would be a sentence of [forty] years[.]

[Mosley]:     Yes, sir.

The trial court proceeded to confirm that Mosley was not under the influence of drugs or alcohol, that he could read and write, and that he had read over his plea petition with his attorney.

¶19. Thus it is clear that Mosley was fully advised by the trial court of the nature of the charge, the effect of his plea on his constitutional rights, and his possible sentence. Mosley responded affirmatively when asked by the trial court if he understood the rights he was waiving and the nature of his possible sentence. We find nothing in the record to indicate that Mosley's plea was invalid. Accordingly, we find that Mosley's plea was voluntary and intelligent.

### B.     Factual Basis

¶20. Mosley next argues that the trial court failed to find a factual basis for his separate guilty pleas to armed robbery. Mosley asserts that "there was absolutely no factual basis stated in the record, or . . . in the guilty[-]plea hearing transcript . . . which gives [Mosley's] admission [sic] to the acts of armed robbery." Mosley further asserts that "he wasn't the principal actor or agent to his allege[d] offense and had no idea the [armed robbery] was about to take place[.]"

¶21. Pursuant to Uniform Rule of Circuit and County Court 8.04(A)(3): "Before the trial

9

court may accept a plea of guilty, the court must determine . . . that there is a factual basis for the plea." "A sufficient factual basis requires an evidentiary foundation in the record which is sufficiently specific to allow the court to determine that the defendant's conduct was within the ambit of that defined as criminal." *Porter v. State*, 126 So. 3d 68, 72 (¶12) (Miss. Ct. App. 2013) (quoting *Smith v. State*, 86 So. 3d 276, 280 (¶11) (Miss. Ct. App. 2012)). We have held that "[a] defendant can establish a factual basis for a guilty plea simply by pleading guilty; however, the guilty plea 'must contain factual statements constituting a crime or be accompanied by independent evidence of guilt.'" *Id.* at (¶14) (quoting *Hannah*, 943 So. 2d at 26-27 (¶16)). Finally, in determining whether a factual basis existed, our review is not limited to the defendant's plea transcript; instead, this Court may review the record as a whole. *Carreiro v. State*, 5 So. 3d 1170, 1173 (¶8) (Miss. Ct. App. 2009).

¶22. Mosley was indicted for armed robbery in violation of Mississippi Code Annotated section 97-3-79 (Rev. 2006), which sets forth:

> Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery and, upon conviction, shall be imprisoned for life in the state penitentiary if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at imprisonment for life in the state penitentiary the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years.

Mosley's indictment in cause number 157-11 stated, in pertinent part, that Mosley:

> [O]n or about the 16th day of November . . . 2010[,] did willfully, unlawfully[,] and feloniously take the personal property of Linda Edwards d/b/a Hodgepodge [b]y Linda, consisting of approximately one hundred twenty dollars ($120.00) . . . and a cell phone, the property of Mary Gibson, an employee of Hodgepodge [b]y Linda, from the person and presence of

10

[Edwards] and [Gibson], against their will, by violence to their persons, by the exhibition of a deadly weapon, . . . a handgun, putting them in fear of immediate injury[.]

Likewise, the indictment in cause number 155-11 stated, in part, that Mosley:

[O]n or about the 19th day of November . . . 2010, did willfully, unlawfully[,] and feloniously take the personal property of Nan Casciaro d/b/a Antique Mall, between seven hundred and eight hundred dollars ($700.00 and $800.00) in good and lawful currency . . . , a cellphone, and a safe, from the person of [Casciaro], against her will, by violence to her person, by the exhibition of a deadly weapon, . . . a handgun, putting her in fear of immediate injury[.]

¶23. During Mosley's plea hearing, the following exchanges occurred between the trial court and Mosley:

[Court]: Now, Mr. Mosley . . . there are two different matters that you're wishing to dispose of by your pleas of guilty. The first one deals with a matter that came to the attention of law enforcement here in Lauderdale County back on November the 19th of 2010. It was alleged on that date [that] you participated in the taking at gunpoint [of] between $700 and $800, a cell phone, safe, [and] other items from Nan Casciaro here in Lauderdale County. That matter was submitted to the March 2011 grand jury . . . [which] indicted you[,] along with others[,] for armed robbery in [c]ause [n]umber 155-11. And you're submitting your plea of guilty in that case right?

[Mosley]: Yes, sir.

[Court]: Also, . . . you're submitting your plea of guilty in connection with a matter that came to the attention of law enforcement here in Lauderdale County back on November 16 of 2010 when it was alleged that you took at gunpoint[,] from Linda Edwards[,] doing business as Hodgepodge by Linda[,] some $120 in cash. That matter also was submitted to the March 2011 [g]rand [j]ury . . . [, which] indicted you . . . for armed robbery. In both cases, they recognize[d] that you've got multiple prior felonies, so you were indicted as a habitual criminal. And as I understand it, you're submitting your plea of guilty in both cases . . . with the understanding that the State's not going to ask that you be sentenced under the habitual[-]criminal day-for-day status;

11

right?

[Mosley]:    Yes, sir.

. . . .

[Court]:    Mr. Mosley, you're pleading guilty to two separate armed robberies . . . . [Y]ou're pleading guilty in [c]ause [n]umber 155-11 because on November 19 of 2011, you participated in taking at gunpoint between $700 and $800, various other personal property[,] at gunpoint[,] from Nan Casciaro; right?

[Mosley]:    Yes, sir.

[Court]:    And that happened here in Lauderdale County?

[Mosley]:    Yes, sir.

[Court]:    Nobody forced you to be involved in that armed robbery of Ms. Casciaro that day?

[Mosley]:    No, sir.

[Court]:    You're also pleading guilty in [c]ause [n]umber 157-11 to armed robbery because on November 16 of 2010[,] here in Lauderdale County, you took at gunpoint from Linda Edwards[,] doing business as Hodgepodge by Linda[,] some $120 in cash; right?

[Mosley]:    Yes, sir.

[Court]:    You knew that you were involved in an armed robbery there?

[Mosley]:    Yes, sir.

[Court]:    Nobody forced you to be involved in that armed robbery that day?

[Mosley]:    No, sir.

[Court]:    And in both cases, you knew that there was a gun involved?

[Mosley]:    Yes, sir.

Thus, at least twice during the plea hearing, the trial court outlined, and Mosley assented to,

the factual basis for each charge of armed robbery. Accordingly, we find that there is an adequate factual basis supporting Mosley's guilty pleas.

¶24. If, in the alternative, Mosley is asserting that the factual basis of his guilty pleas was inadequate because he was not the "principal actor," then this argument too must fail because it is contrary to the law regarding a defendant's liability as an accessory. It is well settled that "an accessory to armed robbery is just as guilty as the principal." *Diggs v. State*, 46 So. 3d 361, 367 (¶20) (Miss. Ct. App. 2010) (citing *McCuiston v. State*, 791 So. 2d 315, 317 (¶¶5-6) (Miss. Ct. App. 2001)). Accordingly, this issue is without merit.

### C. Evidentiary Hearing

¶25. Finally, Mosley argues that during his plea hearing, the trial court gave him incorrect information regarding his parole eligibility; therefore, the trial court erred in dismissing his PCR petition without first conducting an evidentiary hearing.

¶26. "Pursuant to the [UPCCRA], a petitioner is entitled to an in-court opportunity to prove his claims if the claims are 'procedurally alive and substantially show [a] denial of a state or federal right.'" *Edge v. State*, 962 So. 2d 81, 86 (¶23) (Miss. Ct. App. 2007) (quoting *Horton v. State*, 584 So. 2d 764, 767 (Miss. 1991)). The "trial court enjoys wide discretion in determining whether to grant an evidentiary hearing." *Williams v. State*, 4 So. 3d 388, 392 (¶11) (Miss. Ct. App. 2009). Further, a PCR petition is "properly dismissed without the benefit of an evidentiary hearing where it is manifestly without merit." *Id.* Thus, "dismissal is appropriate where it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

¶27. Rule 8.04(A)(4)(b) of the Uniform Rules of Circuit and County Court provides that,

13

in accepting a guilty plea, the trial court has the duty to ensure "[t]hat the accused understands the nature and consequences of the plea, and the maximum and minimum penalties provided by law." During Mosley's plea hearing, the following exchange occurred between Mosley, the trial court, and court officer William Lucy:

[Court]:     You understand that, Mr. Mosley?

[Mosley]:   Kind of.

[Court]:     Huh?

[Mosley]:   Kind of.

[Court]:     What about it are you confused about?

[Mosley]:    Is she saying that . . . the whole [forty-year sentence is] going to be day[-]for[-]day?

[Court]:     I don't know that for sure, and I think the way [the] MDOC interprets that now[,] . . . the first ten years is day-for-day time.

[Court]:     Isn't that right, William?

. . . .

[Lucy]:      Yes, sir.  As of today[,] as far as I know.

[Court]:     You know, they change those rules, so – and, you know, but for armed robbery with a gun as it stands right now, the first ten years of it would be day-for-day time.  You understand that?

[Mosley]:   Yes, sir.

. . . .

[Court]:     Mr. Mosley, . . . you've got just concurrent sentences [of forty] years, and we've gone over in some detail how [the] MDOC classifies armed robbery with a gun.  As we understand it at this point, the first ten years of that would be day-for-day time.  After that, whether it's day-for-day time, that's going to depend

14

on your record as an inmate with [the] MDOC and their rules and regulations. That's not something that this Court can control. The DA's office doesn't control that, nor does [your attorney]. Clear about that?

[Mosley]: Yes, sir.

¶28. However, pursuant to Mississippi Code Annotated section 47-7-3(1)(d)(ii) (Rev. 2011): "No person shall be eligible for parole who shall, on or after October 1, 1994, be convicted of robbery . . . through the display of a firearm[.]" Thus, it is clear that Mosley was given incorrect information regarding his parole eligibility.

¶29. This Court has held that "[b]ecause parole is a matter of legislative grace, parole eligibility or non[]eligibility is not considered a 'consequence' of a guilty plea." *Thomas v. State*, 881 So. 2d 912, 916 (¶10) (Miss. Ct. App. 2004) (citing *Ware v. State*, 379 So. 2d 904, 907 (Miss. 1980)). Thus, "it is not a prerequisite to a voluntary plea that the defendant understand the nature of parole, his eligibility for parole, and the circumstances under which it may be granted." *Id.* On the other hand, "a plea is involuntary if a defendant is affirmatively misinformed regarding the possibility of parole and pleads guilty in reliance on the misinformation." *Id.* (citing *Fairley v. State*, 834 So. 2d 704, 706 (¶8) (Miss. 2003)).

¶30. However, "[t]he failure of the judge to inform the defendant of the mandatory sentencing requirements does not automatically create an invalid plea." *Burnett v. State*, 831 So. 2d 1216, 1219 (¶10) (Miss. Ct. App. 2002) (citing *Gibson v. State*, 641 So. 2d 1163, 1166 (Miss. 1994)). The Mississippi Supreme Court has established the "harmless[-]error rule," which provides that where "the failure to advise a defendant concerning a mandatory sentence or fine requirement did not play a role in the decision of the accused to plead[,] then

15

the failure is not fatal to the sentence." *Id.* (quoting *Sykes v. State*, 624 So. 2d 500, 503 (Miss. 1993)). "Where no prejudice is found, the 'harmless[-]error rule' applies." *Id.* at (¶12) (quoting *Sykes*, 624 So. 2d at 502).

¶31. We find that, under the facts here, the harmless-error rule applies. It is clear from the record of the proceedings below that Mosley's overriding motivation to plead guilty was the dismissal of five felony indictments. Mosley was indicted as a habitual offender in seven separate felony causes. In exchange for his plea of guilty to the two armed-robbery charges, the State agreed to dismiss five felony indictments, and agreed that Mosley be sentenced without the habitual-offender status. As the trial court found in its order denying Mosley's PCR petition:

> If this were not a situation where five (5) separate cases were dismissed due to [Mosley's] guilty pleas in the two (2) cases [that Mosley] is asking this Court to set aside, then the Court would likely find that [Mosley] is entitled to an evidentiary hearing in order to determine whether or not he relied on erroneous information regarding the mandatory day-for-day time required for the offense of armed robbery. Yet, such is not the case. . . . [I]f the Court sets aside [Mosley's] plea[s,] . . . [Mosley] would be facing re-indictment in five (5) separate cases, in addition to the disposition of the two matters [that Mosley] is asking this Court to set aside[.]
>
> . . . .
>
> Given the contingencies involved[,] . . . the Court finds [that] the incorrect information regarding the mandatory time [Mosley] would be required to serve in the two (2) consecutive armed[-]robbery sentences was harmless error. . . . [T]he Court finds [that] it is not necessary to conduct an evidentiary hearing . . . in order to determine whether or not [Mosley] relied on misinformation in entering his guilty pleas, as the erroneous information was obviously not the motivating factor for [Mosley's] pleas.

¶32. We agree with the trial court's finding that the motivating factor for Mosley's pleas was not his parole eligibility and that any misinformation he received concerning parole

16

eligibility was harmless and does not invalidate his voluntary guilty pleas. Accordingly, this issue is without merit.

## CONCLUSION

¶33. We have found that Mosley's PCR petition failed to comply with the procedural requirements of the UPCCRA, violating the one-judgment rule. On that basis alone, the trial court's denial of Mosley's PCR petition is affirmed. Nevertheless, a review of the record of the proceedings below reveals that Mosley's trial counsel did not render ineffective assistance; that Mosley's guilty pleas were voluntarily and intelligently entered and supported by an adequate factual basis; and that Mosley was not entitled to an evidentiary hearing.

¶34. **THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR.**