# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CP-01654-COA

STEPHANIE FIELDS                                                       APPELLANT

v.

STATE OF MISSISSIPPI                                                    APPELLEE

DATE OF JUDGMENT:            10/15/2015
TRIAL JUDGE:                 HON. WINSTON L. KIDD
COURT FROM WHICH APPEALED:   HINDS COUNTY CIRCUIT COURT,
                             FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:      STEPHANIE FIELDS (PRO SE)
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: BARBARA WAKELAND BYRD
NATURE OF THE CASE:          CIVIL - POST-CONVICTION RELIEF
TRIAL COURT DISPOSITION:     MOTION FOR POST-CONVICTION RELIEF
                             DISMISSED
DISPOSITION:                 AFFIRMED - 03/07/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE IRVING, P.J., FAIR AND WILSON, JJ.

### WILSON, J., FOR THE COURT:

¶1.    Stephanie Fields pled guilty to and was sentenced on eighteen counts of exploitation of a vulnerable adult, accessory after the fact to culpable negligence manslaughter, felony identity theft, and three counts of felony use of a Social Security number. All charges were related to Fields's operation of an unlicensed personal care home. Almost four years later, Fields filed a motion for post-conviction relief (PCR), which the circuit court summarily dismissed. We affirm because Fields's claims do not satisfy any exception to the three-year statute of limitations of the Uniform Post-Conviction Collateral Relief Act (UPCCRA).

FACTS

¶2.     In January 2010, in Cause No. 10-42, a Hinds County grand jury indicted Fields on one count of felony identity theft, Miss. Code Ann. § 97-45-19 (Rev. 2006); three counts of felony use of a Social Security number, *id.* § 97-19-85; one count of attempted felony use of a Social Security number; three counts of felony exploitation of a vulnerable adult, Miss. Code Ann. § 43-47-19(b) (Rev. 2004); and one count of attempted felony exploitation of a vulnerable adult.  The various offenses were alleged to have been committed between dates in 2007 and 2009, all against the same victim, Troy Stingley, a man then in his late eighties.

¶3.     In April 2010, a Hinds County grand jury returned separate indictments charging Fields with accessory after the fact to culpable negligence manslaughter in the January 2010 death of Janice Hollins (Cause No. 10-470) and fifteen additional counts of felony exploitation of a vulnerable adult (Cause No. 10-471).  Stingley, Hollins, and the alleged victims in Cause No. 10-471 were all living in an unlicensed personal care home operated by Fields in the City of Jackson.  The counts in Cause No. 10-471 all alleged that Fields accepted payments as compensation for the victims' care but failed to provide adequate shelter, food, water, or heat for them.[1]

¶4.     In November 2011, Fields pled guilty to all charges in the three indictments except for the two attempt charges in Cause No. 10-42, which were dismissed.  At her plea hearing,

---

[1] In addition, in December 2010, a Madison County grand jury indicted Fields for felony kidnapping and felony abuse of a vulnerable adult.  The charges apparently relate to another unlicensed personal care home operated by Fields.  The kidnapping charge was dismissed after Fields pled guilty to felony abuse.  The Madison County Circuit Court sentenced Fields to ten years in the custody of the Mississippi Department of Corrections (MDOC) with five years suspended.

the State provided a factual basis for all charges. In Cause No. 10-42, Fields used Stingley's Social Security number to obtain a credit card, which she used to make purchases in excess of $8,000. In Cause No. 10-470, Hollins died of hypothermia around January 2, 2010, after Eugenia Johnson, a woman who worked for Fields as a "caretaker," threw water on Hollins and left her to sleep overnight in a room with a broken window. When Hollins was found dead the next morning, Fields and Johnson removed Hollins's wet clothes, moved her body and relocated the other residents of the home, and waited over twenty-four hours to notify law enforcement. In Cause No. 10-471, Fields admitted that she accepted compensation for the care of residents of the home without providing adequate shelter, food, water, or heat.

¶5. Fields testified that she and her attorney had discussed her petition to plead guilty prior to the hearing, that she understood the charges against her, that no promises had been made to induce her plea, and that she was satisfied with her attorney. She admitted that she had committed the crimes and described to the court some of the circumstances giving rise to the charges. The circuit court explained the applicable maximum and minimum sentences for each charge and accepted her plea as knowingly and intelligently entered.

¶6. Fields was sentenced in December 2011. Representatives from the Mississippi Department of Health and the Attorney General's Office testified at the sentencing hearing concerning conditions they observed when they investigated the subject home. The Department of Health had previously ordered Fields to cease and desist from operating a different unlicensed personal care home, but Fields did not comply with the order.

¶7. There were fifteen residents living in the subject home on February 9, 2010. Although

3

the home had four bedrooms and two bathrooms, one bedroom and one bathroom appeared to be reserved for the exclusive use of the "caretaker," Johnson, who had mental health issues of her own. The other three bedrooms had seven beds and two additional mattresses between them. The bathroom used by the residents had cold, dirty water backed up in the tub.

¶8. There was no hot water or heat in the house, and the temperature was extremely cold. One resident was clutching a space heater in an effort keep warm. Investigators found no food "of any nutritional value in the residence." When they arrived, Johnson was cooking a large pot of grits, which the residents "devoured . . . ravenously." Residents also "devoured raw ramen noodles without any hesitation." This "agitated" Johnson, but only because the ramen noodles belonged to her. Another resident was eating from a tub of margarine.

¶9. Investigators also found a large box of various medications, including twenty-seven bottles of psychotropic drugs. There were no medical records or any other records of which drugs had been or were supposed to be given to which residents at which times. Most of the residents were disheveled and appeared to be mentally disturbed.

¶10. In Cause No. 10-470, the court sentenced Fields to five years in MDOC custody for accessory after the fact to culpable negligence manslaughter. On each of the seven remaining charges in Cause No. 10-42, the circuit court sentenced Fields to five, ten, or fifteen years in MDOC custody, with all sentences to run concurrently to one another and consecutively to the sentence in Cause No. 10-470. In Cause No. 10-471, the court sentenced Fields to ten years on each of the fifteen counts, said sentences to be served concurrently to one another and concurrently with the sentences in Cause No. 10-42. Fields was also ordered to pay

4

restitution in various amounts. Finally, the court ordered that all sentences imposed would run consecutively to Fields's Madison County sentence. *See supra* n.1.

¶11. In September 2015, Fields filed a PCR motion, alleging that (1) she told her attorney to file a PCR motion, but her attorney did not respond; (2) her plea was not voluntary because of her limited education and because she had developed a brain tumor prior to her plea;[2] and (3) the indictments in Cause Nos. 10-42 and 10-470 were defective because they were not signed by the circuit clerk or a deputy circuit clerk.[3] On September 11, 2015, the circuit court summarily dismissed Fields's motion with prejudice. Fields filed a timely notice of appeal. On appeal, her arguments are similar to claims she raised in the circuit court. She also argues that she received ineffective assistance of counsel because her lawyer "did not fight on her behalf," "did not advise her to go to trial and tell her side of the story," and did not develop "evidence to prove her innocence."

## DISCUSSION

¶12. A circuit court "may summarily dismiss a PCR motion without an evidentiary hearing 'if it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief.'" *Scott v. State*, 141 So. 3d 34, 35 (¶2) (Miss. Ct. App. 2014) (quoting Miss. Code Ann. § 99-39-11(2) (Supp. 2013)). On appeal, this Court will not reverse the summary dismissal of a PCR motion unless the

---

[2] Fields has a GED and worked for eighteen years as a nurse's aide. She attached a few pages of medical records to her PCR motion, but the records do not indicate that her tumor affected her capacity to plead guilty.

[3] The indictments were not signed by the circuit clerk or deputy clerk on the signature pages. They were signed and stamped filed on the first pages.

movant "(1) make[s] a substantial showing of the denial of a state or federal right and (2) show[s] that the claim is procedurally alive." *Id.*

¶13.     Fields's PCR motion is barred by the three-year statute of limitations applicable to claims under the UPCCRA, Miss. Code Ann. § 99-39-5(2) (Rev. 2015), and she identifies no statutory or judicially created exception to the time-bar. *See id.* § 99-39-5(2)(a) (statutory exceptions); *Rowland v. State*, 42 So. 3d 503, 507 (¶12) (Miss. 2010) ("[E]rrors affecting fundamental constitutional rights are excepted from the procedural bars of the UPCCRA."). "[A] claim of an involuntary guilty plea does not surmount the procedural bar." *Vitela v. State*, 183 So. 3d 104, 107 (¶12) (Miss. Ct. App. 2015) (quoting *Hughes v. State,* 106 So. 3d 836, 839 (¶9) (Miss. Ct. App. 2012)); *accord Cole v. State*, 608 So. 2d 1313, 1319 (Miss. 1992); *Trotter v. State*, 907 So. 2d 397, 402 (¶¶14-15) (Miss. Ct. App. 2005). Likewise, claims of ineffective assistance of counsel are subject to the UPCCRA's time-bar, so Fields's unsupported assertions that her lawyer was ineffective are also insufficient to overcome the bar. *See Sanders v. State*, 179 So. 3d 1190, 1192-93 (¶9) (Miss. Ct. App. 2015); *Hughes*, 106 So. 3d at 840 (¶12). Finally, the alleged defects in Fields's indictments are non-jurisdictional and provide no basis for setting aside her convictions. *See Johnson v. State*, 196 So. 3d 1118, 1120-21 (¶¶8-10) (Miss. Ct. App. 2016). Thus, Fields's PCR motion raises no claim that is "procedurally alive." *Scott*, 141 So. 3d at 35 (¶2). Therefore, the circuit court did not err by summarily dismissing the motion. *Id.*[4]

---

[4] We also note that Fields's PCR motion attacks multiple judgments in violation of Mississippi Code Annotated section 99-39-9(2) (Rev. 2015), which provides that a PCR "motion shall be limited to the assertion of a claim for relief against one (1) judgment only." This limitation applies even when, as in this case, multiple convictions result from a single

6

¶14.   **THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED.   ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.**

   **LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR.**

---

plea hearing. *Mosley v. State*, 150 So. 3d 127, 130 (¶7) ( Miss. Ct. App. 2014). "[I]t would have been proper for the [circuit] court to dismiss [Fields's motion] on that basis alone." *Id.* at 131 (¶8). Nevertheless, we have reviewed Fields's claims and hold, for the reasons stated above, that none is excepted from the procedural bars of the UPCCRA. *See id.* (reviewing the merits of the PCR motion notwithstanding the movant's failure to comply with the single-judgment rule).