# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CP-01711-COA

**JODI HANEY A/K/A JODI ANN HANEY**                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/30/2017 |
| TRIAL JUDGE: | HON. JAMES SETH ANDREW POUNDS |
| COURT FROM WHICH APPEALED: | ALCORN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JODI HANEY (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JEFFREY A. KLINGFUSS |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 01/15/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WILSON, J., FOR THE COURT:**

¶1.     In this post-conviction proceeding, Jodi Haney alleges that her guilty plea was involuntary and that she pled guilty because of the ineffective assistance of her counsel. The circuit court denied and dismissed Haney's motion for post-conviction relief (PCR) as without merit. We agree with the circuit court that Haney's motion failed to allege a viable PCR claim. Therefore, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     In December 2015, an Alcorn County grand jury indicted Jodi Haney and Stephen Pharr for a drive-by shooting. *See* Miss. Code Ann. § 97-3-109 (Rev. 2014). In July 2016,

Pharr decided to plead guilty and gave a written statement to law enforcement. Pharr stated that on April 14, 2015, he, Haney, a man known as "Big John," and a man known as "Skeet" met at a Taco Bell in Corinth to sell and trade certain illegal drugs. Pharr and Skeet did the sale/trade in the bathroom of the Taco Bell while Haney and Big John stayed in the car. Pharr, Haney, and Big John then drove back to Haney's home in Alabama. The next day, Pharr called Skeet to discuss a possible issue with the first transaction and to set up a second transaction. They made plans to meet again at the Taco Bell later that day.

¶3. Haney and Pharr drove to Corinth to meet Skeet. Pharr saw Haney's gun in the car, but he was not surprised because Haney usually had the gun with her. Pharr and Haney went to the Taco Bell, and Skeet arrived soon after. Another man approached Skeet's car and got inside, and Skeet then drove away. Pharr and Haney pursued Skeet's car. As they were driving, Pharr heard a gunshot. He turned to look at Haney "because [he] knew she had shot." Haney was holding her gun in her lap. As Pharr and Haney left Corinth, he asked her, "What the hell have you just done?" Haney calmly replied, "I just shot at him." Pharr and Haney then returned to Alabama. Pharr told Haney to get rid of the gun, but he did not know what she did with it. Two days later, Pharr and Haney were arrested for the shooting.

¶4. In July 2016, Pharr pled guilty as an accessory after the fact to the drive-by shooting. At his plea hearing, Pharr affirmed that his written statement was true, and the court admitted the statement into evidence as the factual basis for Pharr's plea. As part of his plea, Pharr agreed to testify against Haney. The State recommended a ten-year sentence with credit for time served, the balance of the sentence suspended, and five years of post-release

supervision. The circuit court imposed the recommended sentence.

¶5. In her PCR motion, Haney claims that there was no evidence other than Pharr's statement to connect her to the shooting. Haney says that she was prepared to go to trial until Pharr made his statement to law enforcement. However, after Pharr implicated her in the shooting, Haney decided to enter an open guilty plea. Haney claims that her attorney advised her that she would receive a lesser sentence if she pled guilty. Thus, in July 2016 she entered an open guilty plea to drive-by shooting.

¶6. At Haney's plea hearing, she denied that she was under the influence of any alcohol, medicine, or other drug. She denied ever having psychiatric illnesses or mental diseases. She denied that anyone had threatened her or promised her anything in order to get her to plead guilty. She verified that she understood that she was waiving important rights, including her right to a jury trial and appeal. The judge stated that he intended to sentence Haney to twenty years with eleven years suspended. However, Haney stated that she understood that the judge could sentence her to the maximum sentence of thirty years' imprisonment. The judge then accepted Haney's guilty plea, finding that Haney pled guilty knowingly, intelligently, and voluntarily.

¶7. Haney's sentencing hearing was held three days later. Consistent with the judge's statements during Haney's plea hearing, he sentenced her to twenty years in the custody of the Department of Corrections, with eleven years suspended and credit for time served.

¶8. In September 2017, Haney filed a PCR motion, alleging ineffective assistance of counsel. Haney's motion alleged that she is innocent and that her attorney could have proven

3

her innocence if he had investigated the evidence against her and pursued other exculpatory evidence. Haney also alleged that her plea was involuntary because she was not informed that she would be ineligible for parole. The circuit court summarily denied and dismissed Haney's motion. Haney appealed.

## ANALYSIS

¶9.    On appeal from the denial of a motion for post-conviction relief, the circuit court's factual findings will not be disturbed unless they are clearly erroneous. *Brown v. State*, 731 So. 2d 595, 598 (¶6) (Miss. 1999). As to issues of law, "the applicable standard of review is de novo." *Id.* "The circuit court may summarily dismiss a PCR petition if it is plain from the face of the petition, any exhibits, and prior proceedings that the petitioner is not entitled to relief." *Worth v. State*, 223 So. 3d 844, 849 (¶15) (Miss. Ct. App. 2017) (citing *Thomas v. State*, 159 So. 3d 1212, 1214 (¶4) (Miss. Ct. App. 2015); Miss. Code Ann. § 99-39-11(2) (Rev. 2015)). "Dismissal is proper where the petitioner can prove no set of facts in support of his claim that would entitle him to relief." *Id.* (citing *Thomas*, 159 So. 3d at 1214 (¶4)). The petitioner bears the burden of proving by a preponderance of the evidence that she is entitled to relief. Miss. Code Ann. § 99-39-23(7) (Rev. 2015).

### I.    Ineffective Assistance

¶10.    A claim of ineffective assistance of counsel requires proof (1) that counsel's performance was objectively deficient and (2) that the defendant suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If either prong of *Strickland* is not met, the claim fails. *Havard v. State*, 928 So. 2d 771, 781 (¶8) (Miss. 2006). "A

4

voluntary guilty plea waives claims of ineffective assistance of counsel, except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea." *Thomas*, 159 So. 3d at 1215 (¶10) (quotation marks omitted). "Thus, to obtain post-conviction relief, a petitioner who pled guilty must prove that his attorney's ineffective performance proximately caused the plea—i.e., that but for counsel's errors, the petitioner would not have entered the plea." *Worth*, 223 So. 3d at 849 (¶17). "This requires proof beyond the petitioner's own conclusory assertions." *Id.* at 849-50 (¶17).

¶11.    In her PCR motion, Haney generally alleged that she is innocent and that her attorney could have proven her innocence if he had investigated the evidence against her and pursued exculpatory evidence. She asserts that her attorney "was ready to get [her] sentenced and did not represent [her] to the best of his ability." However, Haney's motion offered nothing "beyond [her] own conclusory assertions." *Id.* She provided nothing else to corroborate her bare allegations that she is innocent and that available evidence could have proven it.

¶12.    Moreover, during her plea hearing, Haney testified under oath that she was satisfied with her attorney's performance and that she believed that her attorney had properly advised her and represented her best interest. "Statements made in open court under oath carry a strong presumption of veracity." *Thomas*, 159 So. 3d at 1216 (¶12) (quotation marks and brackets omitted); *accord, e.g.*, *Gable v. State*, 748 So. 2d 703, 706 (¶11) (Miss. 1999). "[Haney's] in-court statements that [she] was satisfied with counsel's performance, coupled with the complete absence of any proof to support [her] argument, causes [her] claim to fail." *Thomas*, 159 So. 3d at 1216 (¶13).

5

## II. Involuntary Plea

¶13. In her PCR motion, Haney alleged that her guilty plea was involuntary, asserting as follows: "Involuntary Guilty Plea: I was unaware that my sentence would not be eligible for parole. I feel like if I knew that I could not get different benefits like thirty for thirty[1] and a parole date I would have consider[ed] going to trial." Elsewhere in her motion, she alleged, "I did not know that if I took a plea I would not be given a parole date."

¶14. "A guilty plea is valid as long as it is entered voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." *Worth*, 223 So. 3d at 850 (¶19) (quotation marks omitted). "For a plea to be voluntary, knowing, and intelligent, the judge must advise the defendant of his rights, the nature of the charge against him, and the consequences of his plea, including applicable minimum and maximum sentences." *Id.*

¶15. However, "[b]ecause parole is a matter of legislative grace, parole eligibility or noneligibility is not considered a 'consequence' of a guilty plea." *Moore v. State*, 248 So. 3d 845, 852 (¶17) (Miss. Ct. App. 2017) (quoting *Mosley v. State*, 150 So. 3d 127, 136-37 (¶29) (Miss. Ct. App. 2014)), *cert. denied*, 247 So. 3d 1264 (Miss. 2018). Therefore, "it is not a prerequisite to a voluntary plea that the defendant understand the nature of parole, his eligibility for parole, and the circumstances under which it may be granted." *Id.* (alteration

---

[1] Under Mississippi Code Annotated section 47-5-138.1 (Rev. 2015), certain offenders may receive a thirty-day reduction in sentence for every thirty days of participation in a trusty program, which includes participation in educational or instructional programs, work projects, or special incentive programs. An offender convicted of a drive-by shooting is specifically excluded from this program until she has "served the mandatory time required for parole eligibility." *Id.* at (d).

6

omitted). A plea may be rendered involuntary only if the "defendant is affirmatively misinformed regarding the possibility of parole and pleads guilty in reliance on the misinformation." *Id.* (emphasis omitted).

¶16. Haney's PCR motion failed to state a viable claim that her guilty plea was involuntary and invalid. As stated above, her PCR motion alleged only that she "was unaware that [her] sentence would not be eligible for parole" and that she "did not know that [she] would not be given a parole date." Again, a defendant's failure to "understand . . . [her] eligibility for parole" does not render her guilty plea invalid. *Moore*, 248 So. 3d at 252 (¶17); *see also Jackson v. State*, 178 So. 3d 807, 810 (¶13) (Miss. Ct. App. 2014) ("[B]eing unaware of ineligibility for parole is not synonymous with ill or erroneous advice. A defendant does not possess a constitutional right to full parole information at or before his guilty plea." (quotation marks omitted)). Therefore, the circuit court properly rejected Haney's claim as without merit.

¶17. Moreover, Haney failed to allege that she pled guilty "in reliance on" her supposed misapprehension regarding parole. *Moore*, 248 So. 3d at 252 (¶17). As stated above, Haney's PCR motion stated that she "fe[lt] like if [she] knew that [she] could not get . . . a parole date," then she "would have consider[ed] going to trial." That falls short of alleging that she pled guilty in reliance on any misunderstanding regarding her eligibility for parole.

¶18. In her appellate brief, Haney claims, for the first time, that her attorney affirmatively misinformed her regarding her eligibility for parole. However, this claim is procedurally barred because it was not alleged in Haney's PCR motion and is raised for the first time on

7

appeal. *See, e.g.*, *Jones v. State*, 844 So. 2d 499, 501 (¶14) (Miss. Ct. App. 2003); *Hoskins v. State*, 812 So. 2d 1043, 1045 (¶9) (Miss. Ct. App. 2001); *McClurg v. State*, 758 So. 2d 473, 477 (¶9) (Miss. Ct. App. 2000).

¶19. Finally, in her reply brief on appeal, Haney relies on the following comments by the trial judge at the conclusion of the sentencing hearing:

> You're sentenced in this case . . . to 20 years, 11 years will be suspended pending your future good behavior, no violation of any state, federal or local law, or terms and conditions of your post-release supervision, which will be for a period of five years. That leaves you nine years to serve, minus any time that you served in the local jail. Now, nine years doesn't mean nine years. You'll probably have to do 50 percent of this. Of course, if you get down there and don't act right, cause trouble, get in a fight, or whatever, they could end up keeping you the whole nine years.

Haney suggests that these comments misled her regarding her parole eligibility and eligibility for "thirty for thirty" time. *See supra* n.1.

¶20. However, the circuit judge made these comments three days *after* Haney pled guilty. Thus, Haney clearly did not plead guilty in reliance on the judge's offhand estimate of how much time she "probably" would serve in prison. Therefore, the judge's comments cannot possibly serve as a basis for Haney's claim that her guilty plea was involuntary and invalid.

## CONCLUSION

¶21. Haney's PCR motion failed to allege a viable claim of ineffective assistance of counsel or an involuntary guilty plea. Accordingly, the circuit court properly denied and dismissed the motion without an evidentiary hearing.

¶22. **AFFIRMED.**

   **GRIFFIS, C.J., BARNES AND CARLTON, P.JJ., AND GREENLEE, J.,**

8

**CONCUR. WESTBROOKS, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. TINDELL, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY GREENLEE AND WESTBROOKS, JJ. McDONALD, LAWRENCE AND McCARTY, JJ., NOT PARTICIPATING.**

**TINDELL, J., SPECIALLY CONCURRING:**

¶23.    Mississippi Code Annotated section 97-3-2(2) (Rev. 2014) states that "[n]o person convicted of a crime of violence listed in this section is eligible for parole or for early release from the custody of the Department of Corrections until the person has served at least fifty percent (50%) of the sentence imposed by the court." Many attorneys and trial courts could interpret section 97-3-2(2) to mean that Haney is eligible for parole after serving 50% of her sentence.[2] However, Mississippi Code Annotated section 47-7-3(1)(g)(i) (Rev. 2015) states that "[n]o person who, on or after July 1, 2014, is convicted of a crime of violence pursuant to Section 97-3-2, a sex crime[,] or an offense that specifically prohibits parole release, shall be eligible for parole." The parole board apparently relies on the latter statute in its determination that Haney is ineligible for parole. Based upon a plain reading of these statutes, it is easy to see how the conflicting language may create confusion in understanding

---

[2] Here, the trial judge stated the following at the conclusion of Haney's sentencing hearing:

> You're sentenced in this case . . . to 20 years, 11 years will be suspended pending your future good behavior, no violation of any state, federal[,] or local law, or terms and conditions of your post-release supervision, which will be for a period of five years. That leaves you nine years to serve, minus any time that you served in the local jail. Now, nine years doesn't mean nine years. You'll probably have to do 50 percent of this. Of course, if you get down there and don't act right, cause trouble, get in a fight, or whatever, they could end up keeping you the whole nine years.

parole eligibility for practitioners, defendants, and trial courts.[3]

¶24.  Our statutory law also presently requires that, "within ninety (90) days of admission, the caseworker shall notify the inmate of [his or her] parole[-]eligibility date."  Miss. Code Ann. § 47-7-3.1(3)(a) (Rev. 2015).  Coupled with the previously mentioned conflicting statutes, this post-sentencing determination of parole eligibility denies defendants, trial judges, prosecutors, victims, and the general public the ability to fully understand the consequences of a sentence until after the sentence has been rendered.[4]  Further, this post-sentencing determination has created a scenario where many defense attorneys, understandably, are reluctant to give advice regarding parole eligibility because, if wrong, an inmate could later claim ineffective assistance of counsel.[5]

¶25.  As the majority correctly states, Haney currently possesses no constitutional right to be informed prior to or at the time of the trial court's acceptance of her guilty plea that her sentence is ineligible for parole.  This is because, in 1980, the Mississippi Supreme Court concluded, in a 5-to-4 decision, that a defendant is not entitled to information regarding

---

[3] The correct interpretation of these two statutes is not currently before this Court on appeal.  As such, it will not be addressed here.

[4] In some cases, such as that of a habitual offender, it is abundantly clear that criminal defendants will be ineligible for parole, but in others, such as Haney's case, it remains unclear.

[5] As is demonstrated by multiple decisions, our courts have determined that a defense attorney's provision of the wrong parole-eligibility advice is a ground for an ineffective-assistance-of-counsel claim whereas no advice on the subject fails to constitute a ground for such a claim.  *See Fairley v. State*, 834 So. 2d 704, 707 (¶8) (Miss. 2003); *Thinnes v. State*, 196 So. 3d 204, 210-11 (¶¶26-27) (Miss. Ct. App. 2016); *Mosley v. State*, 150 So. 3d 127, 137 (¶¶29-30) (Miss. Ct. App. 2014); *Sylvester v. State*, 113 So. 3d 618, 624 (¶¶24-25) (Miss. Ct. App. 2013).

parole eligibility before entering a guilty plea. *Ware v. State*, 379 So. 2d 904, 907 (Miss. 1980). Across the country, States remain divided on the issue. *See McCary v. State*, 93 So. 3d 1002, 1007 (Ala. Crim. App. 2011) (holding that, where the relevant statute makes parole ineligibility a direct consequence of a guilty plea, the defendant is entitled to be informed of parole ineligibility prior to pleading guilty); *In re Angel R.*, 118 A.3d 117, 860 (Conn. App. Ct. 2015) (recognizing that a defendant must be informed of the direct consequences of his plea but that the failure to inform a defendant of "all possible indirect and collateral consequences does not render a plea unintelligent or involuntary in a constitutional sense"); *Alexander v. State*, 772 S.E.2d 655, 660 (Ga. 2015) (finding that defense counsel had a duty to advise defendant about automatic parole ineligibility prior to the defendant pleading guilty).

¶26. I write today in the hope of encouraging our current supreme court to readdress the position adopted by *Ware*. In some instances, parole eligibility determines whether one spends decades in prison. As such, I believe parole eligibility itself is a direct consequence of a plea and one that defendants, trial judges, prosecutors, victims, and the general public should have knowledge of prior to sentencing. For these reasons, I specially concur with the majority's opinion.

**GREENLEE AND WESTBROOKS, JJ., JOIN THIS OPINION.**