BARNES, J., FOR THE COURT:
 

 ¶ 1. On August 5, 2013, Gregory Tyler Moore pleaded guilty to five counts of auto burglary and one count of burglary of a dwelling and was sentenced by the Rankin County Circuit Court to fifty years in the custody of the Mississippi Department of Corrections (MDOC).
 
 [1]
 
 Moore filed two motions for post-conviction relief (PCR) in 2014 (one for his auto-burglary convictions and one for the burglary-of-a-dwelling conviction), which the circuit court dismissed. In 2016, Moore filed the instant PCR motion. The circuit court determined the motion was procedurally barred, and Moore was not entitled to any relief for his claims. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Twenty-one-year old Moore was charged with six counts of auto burglary, five counts of burglary of a dwelling, and one count of statutory rape. After dismissing his original lawyer, Moore's parents hired attorneys John and Sherwood Collette in March 2013 to represent Moore. In July 2013, John Collette informed Moore that the State would recommend a thirty-five-year sentence if Moore entered a guilty plea. Moore refused, feeling the plea offer was excessively punitive since he had never before been guilty of any felony.
 

 ¶ 3. On August 2, 2013, a second plea offer was submitted for Moore to plead guilty to five counts of auto burglary and one count of burglary of a dwelling for a cumulative sentence of fifty years in the custody of the MDOC. According to Moore, Sherwood Collette said that although Moore would have to serve one-quarter of his sentence (twelve and one-half years), he could reduce his time for parole eligibility from twelve and one-half years to approximately six years by receiving "trusty time" and "meritorious earned time." Moore claims that he entered guilty pleas to the six counts based on the attorney's advice.
 
 [2]
 
 Moore later discovered that trusty earned time and meritorious earned time could not reduce the time served to be parole eligible, and he would have to serve twelve and one-half years before being eligible. He also discovered he would not be eligible for placement in a work-center facility.
 

 ¶ 4. On February 7, 2014, a PCR motion was filed regarding Moore's conviction for
 burglary of a dwelling, which alleged his guilty plea was not voluntary. A second PCR motion was filed on March 6, 2014, regarding Moore's convictions for automobile burglary. This motion asserted several errors, including ineffective assistance of counsel and raising mental-competency issues. Although both motions stated that they were submitted "by and through counsel," only Moore's notarized signature was present on each. There was no attorney listed as representing Moore. The circuit court dismissed both motions on June 17, 2014, finding that Moore was not entitled to any relief. Moore did not appeal the court's judgment.
 

 ¶ 5. Moore filed another PCR motion on March 8, 2016, arguing his guilty pleas to the six counts were involuntary, as they were based on the misrepresentations by his trial counsel regarding his parole eligibility (ineffective-assistance-of-counsel claim). He also contended that he did not authorize the filing of the two prior PCR petitions, which were "prepared and filed" by Robert Tubwell, a non-attorney engaged in the unauthorized practice of law; so his current PCR motion should be not be procedurally barred as successive.
 
 See
 

 Miss. Code Ann. § 99-39-23
 
 (6) (Rev. 2015).
 

 ¶ 6. The circuit court concluded Moore's claims did not except the motion from procedural bars and dismissed the PCR motion as successive. The court also found that Moore was not entitled to any relief for his claims of involuntary plea and ineffective assistance of counsel. Moore filed a motion for reconsideration or, in the alternative, to clarify the judgment, reasserting his claims that his involuntary plea was a violation of his fundamental constitutional right to due process and that his prior PCR motions were prepared and filed by a "person engaged in the unauthorized practice of law" and should not be considered "valid." The circuit court denied the motion, and Moore now appeals.
 

 STANDARD OF REVIEW
 

 ¶ 7. "If it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief," the trial court may summarily dismiss a PCR petition.
 
 Miss. Code Ann. § 99-39-11
 
 (2) (Rev. 2015). The summary dismissal of a defendant's PCR motion will be affirmed "if [he] fails to demonstrate a claim procedurally alive substantially showing the denial of a state or federal right."
 
 Salter v. State
 
 ,
 
 184 So.3d 944
 
 , 948 (¶ 10) (Miss. Ct. App. 2015) (citing
 
 White v. State,
 

 59 So.3d 633
 
 , 635 (¶ 4) (Miss. Ct. App. 2011) ). "A trial court's dismissal of a PCR petition will not be reversed absent a finding that the trial court's decision was clearly erroneous."
 

 Id.
 

 (citing
 
 Wilson v. State,
 

 76 So.3d 733
 
 , 735 (¶ 9) (Miss. Ct. App. 2011) ). Issues of law are reviewed de novo.
 

 Id.
 

 DISCUSSION
 

 I. Whether Moore's PCR motion is a successive writ.
 

 ¶ 8. Moore contends that the circuit court should not have dismissed his latest PCR motion as successive. In his PCR motion, Moore argued his two prior PCR motions "were not properly prepared or filed pursuant to the requirements of the Mississippi Uniform Post-Conviction Collateral Relief Act [ (UPCCRA) ]," and the person who filed and prepared the first two PCR motions, Tubwell, was engaged in the unauthorized practice of law.
 
 [3]
 
 Moore
 avers in his affidavit that he "never met or spoke with Robert Tubwell" and that he "did not ask or give permission to Tubwell to file those motions." However, Moore does not allege that his signature on the motions was forged; he merely asserts that the burden is on the State to prove the signatures were his, and Tubwell's authorship and filing of the motions rendered the prior motions "null and void."
 
 [4]
 
 The State argues that the record does not support Moore's claim that the prior motions were not authorized by him as his signature is on the two prior PCR motions.
 

 ¶ 9. First, we find that Moore's notarized signatures constitute prima facie evidence that he indeed signed the previous PCR motions.
 
 See
 

 Mack Fin. Corp. v. Decker
 
 ,
 
 461 S.W.2d 228
 
 , 230 (Tex. Civ. App. 1970) (An instrument acknowledged by the defendant "before a notary public ... is prima facie evidence of the execution of the document.") He has submitted no evidence to the contrary. Therefore, we find that State has met its burden of proof that the signatures were Moore's.
 
 [5]
 

 ¶ 10. While there is no Mississippi caselaw addressing the validity of a motion filed by a person unauthorized to practice law, Moore cites cases from other jurisdictions that have held court filings by a person not authorized to practice law are a nullity. In
 
 Preston v. University of Arkansas
 
 ,
 
 354 Ark. 666
 
 ,
 
 128 S.W.3d 430
 
 , 437-38 (2003), the Arkansas Supreme Court held that a complaint filed by Oklahoma attorneys in Arkansas constituted unauthorized practice of law, and the complaint was "a nullity."
 
 See also
 

 Shipe v. Hunter
 
 ,
 
 280 Va. 480
 
 ,
 
 699 S.E.2d 519
 
 , 520 (2010) ("[A] pleading, signed only by a person acting in a representative capacity who is not licensed to practice law in Virginia, is a nullity.");
 
 Carlson v. Workforce Safety & Ins.
 
 ,
 
 765 N.W.2d 691
 
 , 704 (N.D. 2009) (concluding the filing of a request for reconsideration by nonresident attorneys from Ohio, not admitted to practice in North Dakota, was void).
 

 ¶ 11. These cases are distinguishable from the present case for one simple reason-Tubwell did not sign either PCR motion; nor is his name listed on either motion as Moore's attorney. Although the PCR motions both contain form language that Moore was filing the petition "by and through counsel," the only signature on the motions is Moore's, and his signature is attested by a notary.
 
 Compare
 

 Preston
 
 ,
 
 128 S.W.3d at 437
 
 (finding no merit to the Prestons' claim their complaint was filed "pro se ... because they hired attorneys to handle their case, and
 
 those attorneys signed the complaint
 
 " (Emphasis added)).
 

 ¶ 12. "[T]o be entitled to an evidentiary hearing, 'a [movant] must demonstrate, by affidavit or otherwise, that there are unresolved issues of fact that, if concluded favorably to the [movant], would warrant relief."
 
 Hamilton v. State,
 

 44 So.3d 1060
 
 , 1067 (¶ 21) (Miss. Ct. App. 2010) (superseded by statute on other grounds) (quoting
 
 McCuiston v. State,
 

 758 So.2d 1082
 
 , 1085 (¶ 9) (Miss. Ct. App. 2000) ). "This may not be accomplished through [the movant's] own unsupported allegations."
 

 Id.
 

 (quoting
 
 McCuiston,
 

 758 So.2d at 1085-86
 
 (¶ 9) ). There is no evidence of any representation by Tubwell in the record except for Moore's assertion in
 his affidavit. While Moore claims his mother hired Tubwell, her affidavit is oddly silent on this issue. She makes no mention of Tubwell or the two prior PCR motions. Therefore, Moore's "unsupported allegations" do not warrant an evidentiary hearing on this issue, and we affirm the court's finding that Moore's motion is procedurally barred as successive.
 
 [6]
 

 II. Whether the advice by Moore's attorney constituted ineffective assistance of counsel and rendered his guilty plea involuntary.
 

 ¶ 13. Moore argues that his trial attorney's "incorrect advice"-that he could decrease his time for parole eligibility through "trusty time" and "meritorious earned time"-induced him to enter a guilty plea, constituting ineffective assistance of counsel and rendering his plea involuntary.
 
 [7]
 
 Moore's appellate counsel has acknowledged that the language of the statute concerning parole eligibility shows that, at the time Moore entered his guilty pleas, meritorious earned time could be used to reduce time served for parole eligibility.
 
 [8]
 
 But Moore still maintains that, because the attorney told him that he could cut his parole-eligibility time in half (to six years), and he entered his plea based on this advice, he "was prejudiced by counsel's deficient performance" and is entitled to an evidentiary hearing.
 

 ¶ 14. An ineffective-assistance-of-counsel claim requires a showing that (1) counsel's performance was deficient, and (2) this deficient performance resulted in prejudice to the defendant.
 
 Strickland v. Washington,
 

 466 U.S. 668
 
 , 687,
 
 104 S.Ct. 2052
 
 ,
 
 80 L.Ed.2d 674
 
 (1984). "In the context of a guilty plea, 'one must show counsel's errors proximately resulted in the guilty plea and, but for counsel's error, the defendant would not have entered the guilty plea.' "
 
 Savinell v. State
 
 ,
 
 214 So.3d 1061
 
 , 1064 (¶ 9) (Miss. Ct. App. 2016) (quoting
 
 McCollum v. State
 
 ,
 
 81 So.3d 1191
 
 , 1193 (¶ 8) (Miss. Ct. App. 2012) ). However, while "errors affecting fundamental constitutional rights are excepted from the procedural bars of the UPCCRA, ... the supreme court has not held that ineffective-assistance-of-counsel claims in noncapital
 cases invoke a fundamental right that eludes the UPCCRA's procedural bars."
 
 Sanders v. State
 
 ,
 
 179 So.3d 1190
 
 , 1192 (¶ 9) (Miss. Ct. App. 2015).
 

 Though "it is conceivable that under the facts of a particular case, a lawyer's performance was so deficient, and so prejudicial to the defendant that the defendant's fundamental constitutional rights were violated," our supreme court "has never held that merely raising a claim of ineffective assistance of counsel is sufficient to surmount the procedural bar."
 

 Williams v. State
 
 ,
 
 110 So.3d 840
 
 , 844 (¶ 21) (Miss. Ct. App. 2013) (quoting
 
 Smith v. State,
 

 922 So.2d 43
 
 , 47 (¶ 9) (Miss. Ct. App. 2006) ). None of the cases cited by Moore to support his claim of an involuntary plea-
 
 Sylvester v. State
 
 ,
 
 113 So.3d 618
 
 (Miss. Ct. App. 2013),
 
 Readus v. State
 
 ,
 
 837 So.2d 209
 
 (Miss. Ct. App. 2003), and
 
 Tiller v. State
 
 ,
 
 440 So.2d 1001
 
 (Miss. 1983) -involve claims subject to a procedural bar. In order to eliminate the procedural bar, Moore would have to establish that counsel's ineffective assistance caused him to enter his plea, and he would not have entered the plea but for counsel's "incorrect advice."
 

 ¶ 15. A defendant's claims of ineffective assistance of counsel must be pled "with specificity, and the claim must be supported by affidavits other than his own."
 
 Shavers v. State
 
 ,
 
 215 So.3d 502
 
 , 507 (¶ 14) (Miss. Ct. App. 2016) (quoting
 
 Avery v. State
 
 ,
 
 179 So.3d 1182
 
 , 1188-89 (¶ 13) (Miss. Ct. App. 2015) ). "When a movant fails to attach any supporting affidavits and relies solely on his own sworn motion, his ineffective-assistance claim must fail."
 

 Id.
 

 (quoting
 
 Avery
 
 , 179 So.3d at 1189 (¶ 13) ). As there is a presumption of truthfulness "attached to a defendant's solemn declarations in open court ... a collateral attack on a facially correct plea must include supporting affidavits of other persons."
 
 Readus
 
 ,
 
 837 So.2d at 213
 
 (¶ 11).
 

 ¶ 16. In
 
 Readus
 
 , Antonio Readus claimed he entered his guilty plea because his attorney "promised 'six months' and 'that he would be sent to the [Regimented Inmate Discipline program] and ten years on paper.' "
 

 Id.
 

 at 214
 
 (¶ 14). His mother's supporting affidavit stated the attorney also told her "six years and [then] said something about papers after that" the morning of the sentencing hearing.
 

 Id.
 

 at 211
 
 (¶ 5). Since "[b]oth affidavits aver[red] that Readus's lawyer instilled an expectation of a far more lenient sentence than Readus actually received," we remanded for an evidentiary hearing.
 

 Id.
 

 In
 
 Sylvester v. State
 
 ,
 
 113 So.3d 618
 
 , 621 (¶ 5) (Miss. Ct. App. 2013), the movant and his sister submitted affidavits, with the sister corroborating Sylvester's claim the attorney told them Sylvester would earn trusty time and be released on post-release supervision after serving five years.
 

 Id.
 

 at 622
 
 (¶ 13).
 

 [H]is affidavit and his sister's affidavit assert he was misinformed as to his eligibility for trusty earned time. Thus, the plea colloquy did not correct the alleged misinformation.... For these reasons, ... Sylvester is entitled to an evidentiary hearing on whether his plea was knowingly, intelligently, and voluntarily entered[.]
 

 Id.
 

 at 623-24
 
 (¶ 20).
 

 ¶ 17. In a similar case,
 
 Thinnes v. State
 
 ,
 
 196 So.3d 204
 
 , 210-11 (¶¶ 26-27) (Miss. Ct. App. 2016), we remanded for an evidentiary hearing as the defendant "presented sufficient corroborating evidence" that his attorneys "erroneously advised him that he would be eligible for parole after serving three years of his twelve-year sentence."
 

 [T]he circuit court's warning that
 
 no one could guarantee
 
 [
 
 Gregory
 
 ]
 
 Thinnes parole failed to directly address Thinnes
 

 's
 

 parole ineligibility
 
 . While the circuit court's question reflected that no guarantee of parole, probation, or early release existed, the question also appeared to indicate that the possibility for such treatment existed. The transcript therefore fails to show that the circuit court corrected the misinformation that Thinnes's [seven] supporting affidavits allege his attorneys provided him as to parole eligibility.
 

 Id.
 

 at 209-10
 
 (¶ 21) (emphasis added). "[B]ecause parole is a matter of legislative grace, parole eligibility or noneligibility is not considered a 'consequence' of a guilty plea."
 
 Mosley v. State
 
 ,
 
 150 So.3d 127
 
 , 136-37 (¶ 29) (Miss. Ct. App. 2014) (quoting
 
 Thomas v. State,
 

 881 So.2d 912
 
 , 916 (¶ 10) (Miss. Ct. App. 2004) ). "[I]t is not a prerequisite to a voluntary plea that the defendant understand the nature of parole, his eligibility for parole, and the circumstances under which it may be granted."
 

 Id.
 

 But "a plea is involuntary if a defendant is affirmatively misinformed regarding the possibility of parole
 
 and pleads guilty in reliance on the misinformation
 
 ."
 

 Id.
 

 (emphasis added).
 

 ¶ 18. Beside his own affidavit, Moore has failed to show that, but for counsel's advice, he would not have entered his guilty plea. "When the only support the movant offers is his own affidavit, and it is contradicted by unimpeachable documents in the record, an evidentiary hearing is not required."
 
 Lackaye v. State
 
 ,
 
 166 So.3d 560
 
 , 564 (¶ 12) (Miss. Ct. App. 2015) (citing
 
 Gable v. State,
 

 748 So.2d 703
 
 , 706 (¶ 12) (Miss. 1999) ). Furthermore, Moore has offered no "good cause" for failing to obtain additional affidavits.
 
 Compare
 

 Miss. Code Ann. § 99-39-9
 
 (1)(e) (Rev. 2015) ("The affidavits of other persons and the copies of documents and records may be excused upon a showing, which shall be specifically detailed in the motion, of good cause why they cannot be obtained.");
 
 [9]
 

 with
 

 Walden v. State
 
 ,
 
 201 So.3d 1042
 
 , 1046 (¶ 15) (Miss. 2016) (reversing trial court's decision to dismiss PCR motion because movant "specifically pleaded his counsel's alleged ineffective assistance, and because he asserted potential good cause for his failure to provide additional affidavits").
 

 ¶ 19. At the plea hearing, the circuit judge thoroughly covered what rights Moore was giving up by entering his guilty pleas and inquired if Moore understood "the minimum and maximum punishment that could be imposed for each of the crimes[.]" Moore acknowledged that he understood he could be "looking at ... [a] maximum period of incarceration of 70 years." The court asked Moore if he was promised "leniency or anything of that nature in an effort to get [him] to change [his] pleas." Moore replied, "No, sir." The court also asked:
 

 THE COURT: Have you had an opportunity to discuss with your attorney all the facts and circumstances related to each of the crimes you are offering to plead guilty to?
 

 [MOORE:] Yes, sir.
 

 THE COURT: Did your discussions with your attorney include any possible defenses that you may have to these charges?
 

 [MOORE:] Yes, sir.
 

 THE COURT: Did your discussions with your attorney also include the elements of the crimes?
 

 [MOORE:] Yes, sir.
 

 ....
 

 THE COURT: You've been represented by Mr. Collette. Are you satisfied with his representation?
 

 [MOORE:] Yes, sir.
 

 THE COURT: Have you got any complaints you wish to make about your attorney?
 

 [MOORE:] No.
 

 The judge questioned Moore several times if he was sure he wanted to plead guilty. The judge was very thorough, explaining: "It's not too late at this point, Mr. Moore, to stop this hearing and proceed to trial, but it will be once I accept your pleas of guilty. So before I do that, I need to make certain that this is what you want to do." Moore replied, "Yes, sir."
 
 See
 

 Turner v. State
 
 ,
 
 169 So.3d 945
 
 , 947-48 (¶ 10) (Miss. Ct. App. 2014) (finding the record did not support movant's claim that his attorney promised he would be sentenced as a nonhabitual offender and would receive parole, as movant told the judge at plea hearing that "no one had promised him 'any kind of rewards or hopes of leniency' to obtain his guilty plea"). While there was no discussion regarding parole eligibility or trusty time at the plea hearing, the plea petition signed by Moore stated:
 

 My lawyer has counseled and advised me, and has made no threats or promises of any type or kind to induce me to enter this plea of guilty. The decision to seek entry of this plea was my own and mine alone, based on my own reasons and free from any outside influences.
 

 ....
 

 I understand that no one can assure me of parole or early release from prison
 
 .
 

 (Emphasis added). Moore signed the petition at the time he was told of the State's plea offer. Therefore, we find that Moore's guilty plea was facially correct.
 

 ¶ 20. Moreover, the supporting affidavit by Moore's mother did not provide sufficient corroboration to justify an evidentiary hearing. Her affidavit simply states that when she hired John Collette to represent Moore, he had "mentioned something about [her son] having to serve six years" and "something about forty percent (40%), but I didn't understand what he was talking about." Unlike the supporting affidavits in
 
 Readus
 
 ,
 
 Sylvester
 
 and
 
 Thinnes
 
 , this vague representation about serving six years made by John Collette to Ms. Moore occurred months before any plea offer, and she was not present when the attorney met with Moore regarding the plea offer. She never spoke with the attorneys again, although she asserts that she did attempt to contact them with no success. Be that as it may, the only information provided in Ms. Moore's affidavit regarding what the attorney said to Moore about his parole eligibility came from Moore himself. Thus, we find no error in the circuit court's determination that Ms. Moore had no "firsthand knowledge of any statements made by [Moore's] counsel concerning the length of time [Moore] would be required to serve."
 
 See
 

 Kimble v. State,
 

 983 So.2d 1069
 
 , 1074 (¶ 12) (Miss. Ct. App. 2008) (noting that since affidavits were "hearsay and contained no first[ ]hand knowledge of any fact," they "carried no weight").
 

 ¶ 21. "[T]o survive the UPCCRA's procedural bars, 'there must at least appear to be some basis for the truth of the claim' of a fundamental-constitutional-rights violation."
 
 Ducksworth v. State
 
 ,
 
 134 So.3d 792
 
 , 795 (¶ 5) (Miss. Ct. App. 2013) (quoting
 
 Stovall v. State,
 

 873 So.2d 1056
 
 , 1058 (¶ 7) (Miss. Ct. App. 2004) ). We find
 no such basis here and affirm the circuit court's dismissal of Moore's PCR motion.
 

 ¶ 22.
 
 AFFIRMED.
 

 GRIFFIS, P.J., FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., AND IRVING, P.J.
 

 He was sentenced to five consecutive seven-year sentences for each automobile-burglary conviction and twenty-five years for burglary of a dwelling, with ten years suspended, and five years of supervised probation.
 

 In exchange for this plea, the State agreed to nolle pros the statutory-rape charge, one count of auto burglary, four counts of house burglary, and an unindicted count of attempted escape.
 

 The circuit court made no findings on this issue, except to conclude that Moore's PCR motion was procedurally barred.
 

 Moore attached an exhibit to his appeal showing Tubwell was enjoined by the DeSoto County Chancery Court from engaging in the practice of law, but this was not part of the record before the trial court. He requests that this Court take judicial notice of the order. Based on our analysis, we find the exhibit not relevant in this instance.
 

 We also note that the notary was from Lauderdale County, where Moore is in custody.
 

 Notwithstanding this finding, this Court does not condone Tubwell's history of acting as some type of freelance writ writer after his release from prison.
 
 See
 

 Miss. Bar v. Thompson
 
 ,
 
 5 So.3d 330
 
 , 333-38 (¶¶ 3-10, 35) (Miss. 2008) (Tubwell, a paralegal, independently communicated with an inmate and mailed him a pro se PCR petition to file without an attorney's representation, causing the attorney to be in violation of the Mississippi Rules of Professional Conduct.) The court, however, is concerned that adopting Moore's argument could encourage prisoners to file a first PCR motion drafted by a person unauthorized to practice law, knowing that if he were unsuccessful, he could later claim the motion was void and file a second motion, circumventing the successive-motion procedural bar.
 

 Although Moore asserted in his PCR motion that counsel failed to investigate his case and properly prepare for trial, he has abandoned this argument on appeal.
 

 Mississippi Code Annotated section 47-7-3(2) (Rev. 2010) stated:
 

 Notwithstanding any other provision of law, an inmate shall not be eligible to receive earned time, good time or any other administrative reduction of time which shall reduce the time necessary to be served for parole eligibility as provided in subsection (1) of this section
 
 ; however, this subsection shall not apply to the advancement of parole eligibility dates pursuant to the Prison Overcrowding Emergency Powers Act. Moreover, meritorious earned time allowances may be used to reduce the time necessary to be served for parole eligibility as provided in paragraph (c) of subsection (1) of this section
 
 .
 

 (Emphasis added). In 2014, section 47-7-3 was amended and the above italicized language was deleted. Neither party has quantified how much meritorious time would have reduced Moore's time for parole eligibility.
 

 While the Mississippi Supreme Court recently declared subsection (2) of this statute unconstitutional,
 
 see
 

 Ashwell v. State
 
 ,
 
 226 So.3d 69
 
 , 72 (¶ 9) (Miss. 2017) (finding our Constitution "grants the Legislature no power to limit the number of claims a litigant may plead in a particular hearing"), the ruling did not affect the requirements of subsection (1)(e).