# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CP-00755-COA

**ERIC DENORRIS KENNEDY A/K/A ERIC D. KENNEDY A/K/A ERIC KENNEDY**  APPELLANT

**v.**

**STATE OF MISSISSIPPI**  APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/15/2016 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | ERIC DENORRIS KENNEDY (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 03/26/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLTON, P.J., FOR THE COURT:**

¶1. Eric Kennedy appeals the Hinds County Circuit Court's denial of his motion for postconviction relief (PCR). After our review, we find Kennedy's PCR motion time-barred and successive-writ barred. We therefore affirm the circuit court's denial of Kennedy's PCR motion.

## FACTS

¶2. In 1997, a Hinds County grand jury indicted Kennedy and Nakiea Sutton for capital murder, in violation of Mississippi Code Annotated section 97-3-19(2) (Rev. 1994), stemming from the burglary and subsequent murder of Thomas Ward.

¶3.    On June 10, 1998, Kennedy entered a guilty plea to the lesser-included offense of murder. The record reflects that in exchange for Kennedy's pleading guilty, the State recommended that Kennedy receive a sentence of life in prison. The plea petition reflects that the State also agreed not to seek adjudication of Kennedy's guilt in another matter that was then pending. After a plea hearing, the circuit court accepted Kennedy's guilty plea and sentenced Kennedy to serve life in the custody of the Mississippi Department of Corrections.

¶4.    The record reflects that Kennedy filed his first PCR motion in 1998 and a second PCR motion in 2001. In 2002, the circuit court entered an order denying Kennedy's PCR motion.

¶5.    On December 16, 2013, Kennedy filed a third PCR petition. On June 25, 2014, Kennedy filed a petition for a writ of mandamus in the Mississippi Supreme Court requesting that the supreme court compel the circuit court to rule on Kennedy's PCR motion. The mandamus case was assigned case number 2014-M-00851-SCT. On August 29, 2014, the circuit court signed an order denying Kennedy's PCR motion after finding that "the motion has no merit," but the circuit court failed to file and enter the order onto the circuit court's docket at that time. (In fact, the order denying his PCR motion was actually not entered until October 13, 2015.) In finding that the circuit court had ruled, the supreme court subsequently entered an order on November 5, 2014, dismissing Kennedy's petition for a writ of mandamus as moot.

¶6.    On November 18, 2014, Kennedy filed a motion asking the supreme court to impose sanctions on the circuit court for not providing him a copy of its August 29, 2014 order denying his PCR motion within the time allowed for him to file an appeal. Kennedy claimed

that this prevented his filing a timely appeal from the circuit court's denial of his PCR motion. Kennedy also requested that the supreme court treat his June 25, 2014 petition for a writ of mandamus as a notice of appeal or mandate that the circuit court reopen his time to appeal.

¶7.     That same day, Kennedy also filed a notice of appeal from the circuit court's denial of his PCR motion, as well as a motion for an out-of-time appeal. Kennedy claimed that he never received a copy of the circuit court's August 29, 2014 order denying his PCR motion. When the circuit court failed to rule on his motion for an out-of-time appeal, Kennedy filed another petition for a writ of mandamus with the supreme court seeking to compel a ruling.

¶8.     On June 9, 2015, the supreme court entered an order dismissing Kennedy's November 18, 2014 motion to impose sanctions on the circuit court. The supreme court explained as follows:

> Rule 4(h) of the Mississippi Rules of Appellate Procedure allow[s] a party such as Kennedy to request the relief he now seeks directly from the [circuit] court. Kennedy has failed to show that he made such a request of the [circuit] court. Accordingly, we find that the matter is not properly before this Court and it should be dismissed to be re-filed in the [circuit] court.

¶9.     On March 15, 2016, the circuit court entered an order denying Kennedy's November 18, 2014 motion to reopen the time to file a notice of appeal, and the supreme court dismissed that mandamus petition as moot on March 29, 2016.

¶10.    On April 13, 2016, Kennedy filed a motion that he titled "Motion for Rehearing and Also Petition to Treat Filed Petition for Interlocutory Appeal as Direct Appeal." Kennedy also provided the docket from the circuit court showing that the order dated August 29, 2014,

which denied his PCR motion, was not entered on the docket for more than thirteen months after it had been signed and stamped. As stated, the order denying Kennedy's PCR motion was not filed and entered until October 13, 2015.

¶11. The supreme court treated Kennedy's "Motion for Rehearing and Also Petition to Treat Filed Petition for Interlocutory Appeal as Direct Appeal" as a motion to reconsider his original mandamus petition in case number 2014-M-00851-SCT. A panel of the supreme court entered an order on May 25, 2016, holding that Kennedy timely had perfected an appeal of the order denying his second PCR motion because the order dated August 29, 2014, had not been filed and docketed until October 13, 2015. Per the instruction of the supreme court in *Kennedy v. State*, No. 2016-CT-00755-SCT, 2018 WL 4658354, at *3 (Miss. Sept. 27, 2018), we will address the merits of the circuit court's denial of Kennedy's December 16, 2013 PCR motion.

## STANDARD OF REVIEW

¶12. "We review the dismissal or denial of a PCR motion for abuse of discretion. We will only reverse if the [circuit] court's decision is clearly erroneous. When reviewing questions of law, our standard is de novo." *Ware v. State*, 258 So. 3d 315, 317-18 (¶7) (Miss. Ct. App. 2018) (quoting *Hughes v. State*, 106 So. 3d 836, 838 (¶4) (Miss. Ct. App. 2012)).

## DISCUSSION

¶13. As stated, Kennedy filed his first PCR motion on November 30, 1998.[1] In his motion,

---

[1] In his record on appeal, Kennedy failed to provide all of the documents referred to in his PCR motion and prior filings. This Court found the lacking documents on the supreme court's docket in case numbers 2002-M-01730 and 2014-M-00851. *See Mitchell v. State*, 218 So. 3d 278, 283 (¶16) (Miss. Ct. App. 2017) ("[T]his Court certainly can take

Kennedy asserted the following issues: (1) his plea was involuntary because his attorney told Kennedy if he pleaded guilty, he would receive a lesser sentence of life with eligibility for parole; (2) he was denied effective assistance of counsel because his attorney failed to conduct an independent investigation; (3) his attorney "is a liar," forced Kennedy to lie about his involvement in the crime, and promised him that if he went to trial, he would receive the death penalty; and (4) his attorney failed to inform him that he could petition the circuit court to reconsider his guilty plea on the basis that "he was not in [his] right mind to sign a plea agreement." The cause number listed on this first PCR motion is 97-3-218-02JEG.

¶14.  Kennedy also filed several subsequent motions in the circuit court, including a second PCR motion. In this second PCR motion, filed on April 16, 2001, Kennedy argued the following issues:  (1) he was denied effective assistance of counsel because his attorney failed to conduct an independent investigation; (2) the statute under which he was convicted was unconstitutionally applied during his sentencing; (3) he could show actual innocence through an alibi witness, eyewitness, and expert witness; (4) the circuit court lacked jurisdiction to impose a life sentence upon him without a jury; and (5) he was entitled to an evidentiary hearing due to alleged recanted testimony of Sutton, his co-indictee. The cause number listed on this second PCR motion is 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.

¶15.  On December 3, 2002, the circuit court entered an order denying Kennedy's PCR motion. The cause number listed on the order is 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, which is the same cause number on Kennedy's second PCR motion. In its order, the circuit court found that "it

judicial notice of [s]upreme [c]ourt files.").

5

plainly appearing from the motions, exhibits, and prior pleadings in the cases that [Kennedy] is not entitled to the relief requested and the motion should be dismissed."

¶16.    On December 16, 2013, Kennedy filed a third PCR motion, arguing as follows: (1) Mississippi Code Annotated section 97-3-21 (Rev. 1994) and Mississippi Code Annotated section 47-7-3 (Supp. 1997) are void for vagueness because the statutes failed to inform Kennedy of "what type of specific life sentence he would serve"; (2) the Legislature's 2013 revision of section 97-3-21 qualifies as an "intervening decision" pursuant to the Uniform Post-Conviction Collateral Relief Act (UPPCRA); (3) he is entitled to an evidentiary hearing to determine the validity of his co-indictee's alleged recanted testimony; and (4) actual innocence. In the circuit court's order (dated August 29, 2014, and filed October 13, 2015) denying Kennedy's PCR motion, the circuit court held: "The [c]ourt, having reviewed this matter, and being otherwise thoroughly advised in the premises, is of the opinion that the motion has no merit. Accordingly, the [c]ourt finds that [Kennedy] is not entitled to the relief requested and, therefore, the [PCR motion] should be denied." Kennedy now appeals the circuit court's denial of his PCR motion.

¶17.    Mississippi Code Annotated section 99-39-5(2) (Rev. 2015) states that where a movant has entered a guilty plea, a PCR motion "shall be made . . . within three years after the entry of the judgment of conviction." A movant's "failure to file a PCR motion within the three years is a procedural bar." *Blount v. State*, 126 So. 3d 927, 930-31 (¶12) (Miss. Ct. App. 2013). Additionally, Mississippi Code Annotated section 99-39-23(6) (Rev. 2015) provides that an order denying a PCR motion is considered a final judgment and a bar to a

6

second or successive motion. Here, Kennedy's judgment of conviction was entered in 1998. Kennedy filed this latest PCR motion more than fifteen years later, which was well beyond the applicable three-year limitations period. This is also Kennedy's third PCR motion. We therefore find that Kennedy's present PCR motion is time-barred and successive-writ barred unless Kennedy can show by a preponderance of the evidence that an exception to the procedural bars exists. *Arnold v. State*, 225 So. 3d 561, 563-64 (¶6) (Miss. Ct. App. 2017); *Blount*, 126 So. 3d at 931 (¶14).

¶18. The UPCCRA provides several statutory exceptions to time and successive-writ bars. Miss. Code Ann. § 99-39-5(2)(a)-(b)[2] and Miss. Code Ann. § 99-39-23(6).[3] The supreme

---

[2] Section 99-39-5(1)(a)-(b) provides six exceptions to the time-bar:

(1) an intervening decision from the Mississippi or United States Supreme Court that would adversely affect the outcome of the conviction or sentence; (2) newly discovered evidence not reasonably discoverable at trial that would likely have caused a different result; (3) biological evidence demonstrating that the movant would likely either not have been convicted or received a lesser sentence; (4) the movant's sentence is expired; (5) his parole, probation, or conditional release has been unlawfully revoked; or (6) the motion is in a capital case and is filed no more than one year after conviction.

*Campbell v. State*, 233 So. 3d 904, 906 (¶6) (Miss. Ct. App. 2017).

[3] Section 99-39-23(6) sets forth the exceptions to the successive-writ bar:

[E]xcepted from this prohibition are those cases in which the petitioner can demonstrate either that there has been an intervening decision of the Supreme Court of either the State of Mississippi or the United States which would have actually adversely affected the outcome of his conviction or sentence or that he has evidence, not reasonably discoverable at the time of trial, which is of such nature that it would be practically conclusive that, if it had been introduced at trial, it would have caused a different result in the conviction or sentence. Likewise excepted are those cases in which the petitioner claims that his sentence has expired or his probation, parole or conditional release has

7

court has further held that the procedural bars of the UPCCRA are inapplicable to "errors affecting fundamental constitutional rights." *Rowland v. State*, 42 So. 3d 503, 507 (¶12) (Miss. 2010). The following "fundamental-rights exceptions have been expressly found to survive procedural bars: (1) the right against double jeopardy; (2) the right to be free from an illegal sentence; (3) the right to due process at sentencing; and (4) the right not to be subject to ex post facto laws." *Carter v. State*, 203 So. 3d 730, 731 (¶7) (Miss. Ct. App. 2016) (internal quotation mark omitted). We recognize that "the mere assertion of a constitutional right violation" does not trigger the exception. . . . [T]here must at least appear to be some basis for the truth of the claim" of a fundamental-constitutional-rights violation. *Mays v. State*, 228 So. 3d 946, 948 (¶5) (Miss. Ct. App. 2017); *see also Fluker v. State*, 170 So. 3d 471, 475 (¶11) (Miss. 2015).

¶19. As acknowledged, the record reflects that the instant PCR motion was successive and that many of Kennedy's claims were raised in his prior PCR motions and filings. We now turn to examine whether Kennedy provided sufficient evidence to overcome the procedural bars.

## I. Ineffective Assistance of Counsel and Involuntary Plea

¶20. Kennedy argues that because he was denied effective assistance of counsel and involuntarily entered his guilty plea, the circuit court erred in denying his PCR motion. Kennedy claims that he entered his guilty plea "under extreme duress" because he "was

---

been unlawfully revoked.

*Williams v. State*, 248 So. 3d 910, 913 (¶9) (Miss. Ct. App. 2018).

threatened . . . and lied to by his counsel and[,] with the aid of [his] mother[,] was convinced to enter a plea of guilt despite the evidence existing at the time of the plea." Kennedy also asserts that based on his counsel's advice, he "assumed" he would receive parole if he pleaded guilty. The record reflects that Kennedy raised these issues in his 1998 and 2001 PCR motions, and the circuit court denied relief.

¶21. We recognize that in order to make an ineffective-assistance claim, the movant must show: "(1) counsel's performance was deficient; and (2) prejudice resulted." *Hughes v. State*, 106 So. 3d 836, 840 (¶12) (Miss. Ct. App. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "In the context of a guilty plea, one must show counsel's errors proximately resulted in the guilty plea and, but for counsel's error, the defendant would not have entered the guilty plea." *Moore v. State*, 248 So. 3d 845, 850 (¶14) (Miss. Ct. App. 2017) (internal quotation marks omitted).

¶22. "The Mississippi Supreme Court has consistently held that the UPCCRA's procedural bars apply to post-conviction relief claims based on ineffective assistance of counsel." *Hamberlin v. State*, 165 So. 3d 491, 494 (¶15) (Miss. Ct. App. 2015) (internal quotation marks omitted). However, this Court has recognized that in certain cases, "an attorney's performance is so deficient and prejudicial to a defendant, that it is deemed to be violative of the defendant's fundamental constitutional rights." *Id*. at (¶13); *see also Rowland*, 42 So. 3d at 506 (¶9) ("[E]rrors affecting fundamental constitutional rights are excepted from the procedural bars of the UPCCRA."). Overcoming the procedural bars "requires more than a party's own affidavit or mere assertions made within his brief." *McCoy v. State*, 111 So.

9

3d 673, 679 (¶21) (Miss. Ct. App. 2012). "A defendant's claims of ineffective assistance of counsel must be pled with specificity, and the claim must be supported by affidavits other than his own." *Moore v. State*, 248 So. 3d 845, 851 (¶15) (Miss. Ct. App. 2017). We recognize the following law:

> [W]hen the only support the movant offers is his own affidavit, and it is contradicted by unimpeachable documents in the record, an evidentiary hearing is not required. However, when the movant attaches an affidavit of another who supports the allegation, the [circuit] court may be required to conduct an evidentiary hearing.

*Lackaye v. State*, 166 So. 3d 560, 564 (¶12) (Miss. Ct. App. 2015) (citation omitted).

¶23. Regarding Kennedy's claim that he was misinformed about his parole eligibility, we have explained that "[b]ecause parole is a matter of legislative grace, parole eligibility or noneligibility is not considered a 'consequence' of a guilty plea." *Moore*, 248 So. 3d at 852 (¶17). "[I]t is not a prerequisite to a voluntary plea that the defendant understand the nature of parole, his eligibility for parole, and the circumstances under which it may be granted." *Id*. However, "a plea is involuntary if a defendant is affirmatively misinformed regarding the possibility of parole and pleads guilty in reliance on the misinformation." *Id*. (emphasis added). "A defendant is entitled to an evidentiary hearing if he alleges that his plea is involuntary because he relied on his attorney's erroneous advice regarding the possibility of parole, and his allegations are uncontradicted by the record." *Lackaye*, 166 So. 3d at 563 (¶8).

¶24. Our review of Kennedy's plea petition, which he signed, dated, and filed June 10, 1998, reflects the following language:

10

> I declare that no officer or agent of any branch of government, nor any other person has made any promise of inducement of. any kind to me, or within my knowledge to anyone else, that I will receive a lighter sentence, probation, early release, or any other form of leniency if I plead "GUILTY."
>
> . . . .
>
> [I]t is my understanding that the District Attorney will recommend to the [c]ourt that I receive a sentence as follows:  On a reduced charge of murder: life in prison.  Remand all other pending charges.  Credit for time served.
>
> I understand that if . . . I am sentenced after July 1, 1995, for any crime, I may not be eligible for parole.

Additionally, the plea petition set forth that "the punishment which this [c]ourt may impose for this crime that I am charged with is as follows," and in the space next to count one, Kennedy wrote "life" on the line under the maximum sentence, and he left the line under the minimum sentence blank.  However, our review of the plea hearing transcript reflects no mention of parole eligibility.

¶25.   This Court has held that a defendant has provided sufficient evidence showing that he was entitled to an evidentiary hearing on whether his plea was knowingly, intelligently, and voluntarily in cases where:  the defendant alleged that he was given erroneous advice by his attorney as to his parole eligibility, the alleged misinformation went uncorrected (such as the failure to address the issue of parole during the plea hearing), and the defendant provided evidence other than his own sworn statement (such as a sworn affidavit from a third party) in support of his allegation.  *See Jackson v. State*, 178 So. 3d 807, 812 (¶¶21-22) (Miss. Ct. App. 2014); *Sylvester v. State*, 113 So. 3d 618, 623-24 (¶¶19-20) (Miss. Ct. App. 2013); *Thomas v. State*, 881 So. 2d 912, 917-18 (¶¶14, 20) (Miss. Ct. App. 2004).

¶26. In the present case, the supreme court docket shows that the only evidence Kennedy provided in support of his assertions was his own affidavit and a statement purportedly from his mother which was titled "Affidavit."[4] Kennedy attached both of these documents to his 1998 PCR motion and 2009 petition for writ of certiorari.[5] Kennedy's mother's statement, which was not dated or sworn, stated that Kennedy did not kill anyone, and that he did not tell anyone that he was innocent because his life was in danger. Her statement also stated that Kennedy's attorney persuaded Kennedy to plead guilty and advised that, if he went to trial, he would receive the death penalty. Kennedy's mother further provided that Kennedy's attorney assured him that if he pleaded guilty, Kennedy would have a chance to get parole in ten to fifteen years. We find no evidence in the circuit court docket that an evidentiary hearing was held on the matter, but the circuit court ultimately found that Kennedy's PCR claims were without merit and that he was not entitled to relief.

¶27. The supreme court has defined an affidavit as "a written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer such oath or affirmation." *Wilcher v. State*, 863 So. 2d 719, 744 (¶78) (Miss. 2003) (citing Black's Law Dictionary, 58

---

[4] In his 1998 PCR motion, Kennedy asserted that his mother, Darlene Gardner, and a woman named Clara Carter were willing to provide statements saying Kennedy's defense counsel assured him that based on his plea agreement, Kennedy would be sentenced to life with parole. Kennedy attached his own affidavit in support of his motion, as well as the statement from his mother, Darlene Gardner, but failed to provide an affidavit from Clara Carter.

[5] Kennedy did not include these exhibits in his record on appeal. Documents attached to an appellate brief "are not part of the trial record[, and] [t]hese documents are also outside of our review." *Webster v. State*, 152 So. 3d 1200, 1202 n.2 (Miss. Ct. App. 2014).

(6th ed. 1990)). In *Wilcher*, the movant attached to his PCR motion statements made by five jurors, which the movant referred to as "affidavits." *Id*. However, the supreme court found that many of the "affidavits" were not "notarized as made before any official." *Id*. (citing Miss. Code Ann. § 11-1-1 (Rev. 2002)). The supreme court held that these "unsworn statements" failed to provide sufficient evidence to support the movant's allegations in his PCR motion. *Id*. at (¶80); *see also Russell v. State*, 849 So. 2d 95, 119 (¶88) (Miss. 2003) (explaining that an unsworn statement attached to PCR motion "is not an affidavit and, pursuant to statutory requirements, we give it no credence").

¶28. Upon review, we find that Kennedy failed to provide sufficient evidence in support of his allegation of ineffective assistance of counsel. Kennedy therefore failed to meet the burden of proof to warrant an evidentiary hearing or to overcome the procedural bar. *See Salter v. State*, 184 So. 3d 944, 951 (¶23) (Miss. Ct. App. 2015) ("In PCR cases, where a party offers only his affidavit, then his ineffective assistance of counsel claim is without merit.") (internal quotation mark omitted); *Edwards v. State*, 995 So. 2d 824, 826-27 (¶11) (Miss. Ct. App. 2008) ("A [PCR motion] unsupported by affidavits other than the petitioner's own fails to meet the pleading requirements of [section 99-39-9] and, thus, is deficient on its face and properly dismissed without an evidentiary hearing.").

¶29. Furthermore, our review of Kennedy's plea petition and the transcript of his guilty plea hearing negates his assertion that his plea was involuntary. Kennedy's plea petition sets forth that Kennedy was mentally competent to enter his plea. Kennedy wrote on his plea petition that "I participated in the killing of [Thomas] Ward by holding him down while

13

Nakia Sutton got a knife and stabbed Mr. Ward." Kennedy swore that the facts submitted in his plea petition were true.

¶30.    During his plea hearing, Kennedy also informed the circuit court, under oath, that he entered Ward's house and held Ward down while Sutton[6] killed him. Kennedy testified that he had reviewed his plea petition with his attorney, and that he understood it. Kennedy also swore that he had not been threatened or promised anything in exchange for his guilty plea. Kennedy assured the circuit court that he was satisfied with his counsel's services, and thought he had been properly advised and represented. Kennedy's counsel stated that based on his conversations with Kennedy, he thought Kennedy fully understood the consequences of pleading guilty. The circuit court explained to Kennedy that by pleading guilty, Kennedy waived the right to appeal his conviction, and Kennedy testified that he understood that fact. After questioning Kennedy and his counsel, the circuit court accordingly found that Kennedy's guilty plea was "intelligently and understandingly" made and accepted the plea. Based on our review, we find that Kennedy's guilty plea was voluntarily, intelligently, and knowingly made.

## II.    Recanted Testimony/Actual Innocence

¶31.    In support of his claim of actual innocence, Kennedy claims that his co-defendant, Sutton, submitted an affidavit in 2000 stating that Kennedy was nowhere near the crime scene on the night the victim died and that Kennedy had no involvement in the murder. Kennedy maintains that at Sutton's own plea hearing, Sutton made statements implicating

---

[6] The transcript states "Squilly," which we assume is a nickname for Sutton.

14

Kennedy in the crime. Kennedy argues that because Sutton recanted these statements, Kennedy is therefore entitled to an evidentiary hearing to determine the validity of the recanted statements. Kennedy also asserts that Sutton's alleged affidavit constitutes "newly discovered evidence," which exempts his PCR claims from the procedural bars.

¶32. We recognize that "an evidentiary hearing is required when recanted testimony is raised in a PCR motion." *Esco v. State*, 102 So. 3d 1209, 1214 (¶13) (Miss. Ct. App. 2012). However, Kennedy mischaracterizes Sutton's affidavit as a recanted statement. Sutton never testified or provided a statement at Kennedy's plea hearing. Additionally, as Kennedy admits in his brief, Sutton's alleged statements implicating Kennedy in the murder were supposedly made at Sutton's own plea hearing.

¶33. We next turn to determine whether Sutton's affidavit constitutes newly discovered evidence that is sufficient to overcome the procedural bar and warrant the granting of a new trial. This Court has stated that:

> In order to warrant the granting of a new trial on the ground of newly discovered evidence, it must appear that the evidence 1) will probably change the result if a new trial is granted, 2) has been discovered since the trial, 3) could not have been discovered before the trial by the exercise of due diligence, 4) is material to the issue, and 5) is not merely cumulative, or impeaching. Mississippi case law requires that the proponent of the newly discovered evidence satisfy all of the prerequisites of the above-stated rule before a reversal can be granted.

*Johnson v. State*, 39 So. 3d 963, 966 (¶11) (Miss. Ct. App. 2010) (citation omitted) (quoting *Witherspoon v. State*, 767 So. 2d 1065, 1067 (¶6) (Miss. Ct. App. 2000)).

¶34. In *Johnson*, 39 So. 3d at 965-66 (¶9), this Court stated as follows:

> Newly discovered evidence is relevant only in situations where a defendant

15

went to trial and was convicted. If following the trial, a defendant discovers relevant and material evidence which could not have reasonably been discovered prior to trial, the defendant may seek to have his conviction set aside based on the newly discovered evidence. When a defendant pleads guilty, he is admitting that he committed the offense. *Therefore, by definition, a plea of guilty negates any notion that there is some undiscovered evidence which could prove his innocence.*

(Emphasis added). The *Johnson* court found that the movant's "sworn testimony in which he admitted that he was guilty of the murder of [the victim] negates his current claim that there is newly-discovered evidence that proves his innocence." *Id*. at 966.

¶35. In the present case, Kennedy failed to include Sutton's affidavit in the record on appeal. However, this Court located the affidavit on the supreme court docket 2002-M-01730. The affidavit was attached as an exhibit to Kennedy's July 2009 petition for writ of certiorari. The affidavit, purportedly written by Sutton, claims that Sutton alone was responsible for the death of Thomas Ward and that Kennedy was not present or involved in the murder. The affidavit, which is notarized, lists Kennedy and another man as the witnesses.[7] Kennedy provides no explanation as to how he discovered Sutton's affidavit, nor does he explain why this information could not have been discovered before he entered his guilty plea. In his present PCR motion, he simply asserts that "Sutton's affidavit was not filed until 2000."

¶36. Another integral issue is that the record reflects that during Kennedy's guilty plea hearing, Kennedy swore under oath that he was guilty of Ward's murder. Kennedy testified that he also understood the allegations set forth against him, and he admitted that he did

---

[7] The witness's name on the affidavit appears to be Jeffrey Ladner.

16

commit the alleged crime. We therefore find that Kennedy, like the movant in *Johnson*, failed to satisfy the prerequisites to warrant granting a new trial or evidentiary hearing based on the ground of newly discovered evidence.[8]

### III.    Statutes Void for Vagueness

¶37.    Finally, Kennedy argues that Mississippi Code Annotated sections 97-3-21 and 47-7-3 were not written in "a language common to a person of ordinary intelligence" and therefore infringed upon his right to notice of his possible sentence. Kennedy explains that by not receiving proper notice of his possible sentence for pleading guilty to murder he received an illegal sentence. Kennedy asserts that pursuant to Mississippi Code Annotated section 99-39-11, he was entitled to an evidentiary hearing to determine whether the statutes violated his constitutional right to notice for failure to be construed in a language common to a person of ordinary intelligence. Kennedy claims that section 47-7-3 "stated that a capital murder conviction would receive parole," so he assumed that by pleading guilty to murder, a lesser included offense to capital murder, he would be eligible for parole.

¶38.    Kennedy was indicted for capital murder and pleaded guilty to the lesser charge of murder. At the time of Kennedy's conviction and sentence in June 1998, section 97-3-21 (Rev. 1994) provided, "Every person who shall be convicted of murder shall be sentenced by the court to imprisonment for life in the State Penitentiary." Section 47-7-3(1)(f)-(g)

---

[8] Kennedy also asserts that the statements provided by several witnesses support his claim of innocence. The record reflects that these statements were taken by detectives after Ward's murder and nearly a year prior to the entry of Kennedy's guilty plea. Therefore, these statements fail to fall under the purview of newly discovered evidence. *See Johnson*, 39 So. 3d at 966 (¶11).

(Supp. 1997) stated as follows:

> (f) No person shall be eligible for parole who is charged, tried, convicted and sentenced to life imprisonment under the provisions of Section 99-19-101.

> (g) No person shall be eligible for parole who is convicted or whose suspended sentence is revoked after June 30, 1995.

Additionally, section 99-19-101(1) (Rev. 1994) provided:

> (1) Upon conviction or adjudication of guilt of a defendant of capital murder *or other capital offense*, the court shall conduct a separate sentencing proceeding *to determine whether the defendant should be sentenced to death, life imprisonment without eligibility for parole, or life imprisonment*. . . . If the trial jury has been waived, or if the defendant pleaded guilty, the sentencing proceeding shall be conducted before a jury impaneled for that purpose or may be conducted before the trial judge sitting without a jury if both the State of Mississippi and the defendant agree thereto in writing.

(Emphasis added). Mississippi Code Annotated section 1-3-4 (Supp. 1997) defined "capital cases" as "criminal cases, offenses and crimes punishable by death or imprisonment for life in the state penitentiary."

¶39. We find that the plain language of these statutes clearly state that by pleading guilty to murder, Kennedy was not entitled to parole eligibility. In *Booker v. Bailey*, 839 So. 2d 611, 612 (¶6) (Miss. Ct. App. 2003), this Court held that pursuant to section 47-7-3(1)(g), a defendant who was convicted of murder and sentenced to life imprisonment in 1997 was not eligible for parole. This Court further explained in that case that "[w]hether or not [the defendant] is an habitual offender is of no importance to the validity of this sentence. Habitual offender status is but one route to a prison term without [eligibility] of parole." *Id*. at (¶7).

¶40. Kennedy also argues that the Legislature's 2013 revision of section 97-3-21 qualifies

18

as an "intervening decision" pursuant to the URPPCA. However, this Court has held that "[a]n intervening decision under [the URPPCA] refers to case law—a decision of the "Supreme Court of either the State of Mississippi or the United States." *Fleming v. State*, 97 So. 3d 1234, 1236 (¶7) (Miss. Ct. App. 2011).

¶41. After our review, we find that Kennedy has failed to meet his burden of showing that any statutory or fundamental-right exception applies to his PCR claims. We therefore affirm the circuit court's denial of Kennedy's PCR motion.

¶42. **AFFIRMED.**

**BARNES, C.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. J. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**