# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CP-00804-COA

**MARCUS HERBERT HARRIS A/K/A MARCUS HARRIS A/K/A MARCUS H. HARRIS**　　　　　　　　　　**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**　　　　　　　　　　**APPELLEE**

DATE OF JUDGMENT: 01/03/2019
TRIAL JUDGE: HON. ROBERT P. KREBS
COURT FROM WHICH APPEALED: JACKSON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT: MARCUS HERBERT HARRIS (PRO SE)
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
　　　　　　　　　　　　　　BY: BARBARA WAKELAND BYRD
NATURE OF THE CASE: CIVIL - POST-CONVICTION RELIEF
DISPOSITION: AFFIRMED - 08/11/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON, P.J., GREENLEE AND WESTBROOKS, JJ.

### CARLTON, P.J., FOR THE COURT:

¶1.　In 2011, Marcus Harris pleaded guilty to murder and aggravated assault. The Jackson County Circuit Court sentenced Harris to serve a life sentence for his murder conviction and a twenty-year sentence for his aggravated assault conviction in the custody of the Mississippi Department of Corrections (MDOC).

¶2.　More than three years later, Harris filed a petition to clarify his sentence, which the trial court treated as a motion for post-conviction relief (PCR). The trial court denied Harris's motion. In 2018, Harris filed his second PCR motion, which the trial court denied as time-barred and without merit.

¶3.    Harris now appeals from the trial court's order denying his PCR motion. After our review, we find that Harris's PCR motion is time-barred and successive-writ barred. We also find that Harris's claims of fundamental-rights violations are without merit. We therefore affirm the trial court's order denying Harris's PCR motion.

**FACTS**

¶4.    On December 26, 2009, Harris was involved in an altercation that resulted in the fatal shooting of Sema Hall and permanent paralysis of Willie Williams. As a result of the altercation, Harris was indicted for capital murder, with robbery as the underlying charge, and aggravated assault. Harris entered a plea of not guilty, and the matter proceeded to trial. After opening statements,[1] Harris withdrew his not-guilty plea, and on March 1, 2011, he pleaded guilty to murder and aggravated assault. Harris received a life sentence for his murder conviction and a twenty-year sentence for his aggravated-assault conviction in the custody of the MDOC. The trial court also ordered Harris to pay a $5,000 fine for each conviction, as well as all court costs.

¶5.    On July 31, 2014, more than three years after pleading guilty, Harris filed a petition to clarify his sentence. After reviewing Harris's petition and the State's response, the trial court entered an order denying relief, finding that Harris's sentence was unambiguous. Harris appealed from the trial court's denial of his petition. On appeal, this Court affirmed

---

[1] The trial transcript reflects that Harris was unsatisfied with his defense counsel's performance during voir dire, so Harris dismissed his trial counsel and proceeded to trial pro se with the assistance of his public defender.

the trial court's decision. *Harris v. State*, 230 So. 3d 718, 719 (¶1) (Miss. Ct. App. 2016).

This Court held that "Harris's petition to clarify his sentence falls within the purview of

postconviction relief, as Harris asserts that his sentence is ambiguous." *Id*. at 720 (¶5) (citing

*Laneri v. State*, 167 So. 3d 274, 277 (¶6) (Miss. Ct. App. 2015)). This Court acknowledged

that "Harris did not explicitly file a PCR motion in the circuit court" but explained that

"Harris's petition takes issue with the ambiguity of his sentence. Therefore, we consider

Harris's appeal as one from a denial of PCR." *Id*. This Court ruled that because Harris

pleaded guilty in March 2011, "his PCR motion is time-barred under Mississippi Code

Annotated section 99-39-5(2) (Rev. 2015), as he filed his motion more than three years after

the entry of his judgment of conviction." *Id*.[2]

¶6. On May 21, 2018, Harris filed a second PCR motion. That same day, Harris also filed

a motion for discovery and for an expansion of the record. In his PCR motion, Harris set

forth the following claims: (1) no factual basis for his guilty plea existed; (2) his guilty plea

was the result of ineffective assistance of counsel; (3) he did not voluntarily and intelligently

enter his guilty plea; (4) his indictment was defective and deprived the trial court of subject

---

[2] In his reply brief, Harris argues that his 2014 motion to clarify his sentence should not be treated as a PCR motion because he did not seek to collaterally attack his conviction and sentence. However, in addressing that motion, this Court explained that because Harris argued that his sentence is ambiguous, this Court would treat Harris's appeal of the denial of his motion to clarify his sentence as an appeal from the denial of a PCR motion. *Id*. "An argument that a sentence violates law, either because it is clearly erroneous or because it is unredeemably ambiguous or incomplete, would be proper under the post-conviction relief procedures." *Laneri*, 167 So. 3d at 277 (¶6) (quoting *Burns v. State*, 933 So. 2d 329, 331 (¶8) (Miss. Ct. App. 2006)).

matter jurisdiction; and (5) the trial court violated Uniform Rule of Circuit and County Court 8.04 by participating in plea discussions. In his motion for discovery and expansion of the record, Harris argued that he needed additional documents to prove his PCR claims, including the transcript from the trial (in which only voir dire and opening statements were completed prior to Harris deciding to enter a plea of guilty); the surveillance video from the December 2009 shooting; the transcript of the plea hearing; and all thirty-eight letters he wrote to the trial court complaining about his public defenders and the conditions of the jail.

¶7. The trial court entered an order on January 3, 2019, denying Harris's PCR motion. The trial court held that Harris's PCR motion was time-barred and without merit. The trial court explained that it "reviewed the transcripts of both the guilty plea and the opening statements made at trial, guilty plea petition, sentencing order, the [PCR motion] and applicable law[,] and determined that no evidentiary hearing was necessary." The trial court stated that Harris's PCR motion was time-barred pursuant to Mississippi Code Annotated section 99-39-5(2) (Rev. 2015) because Harris failed to file his PCR motion within three years after his conviction. The trial court further found that Harris failed to show that his PCR claims involve one of the statutory exceptions to the time-bar or an error affecting a fundamental constitutional right. However, the trial court stated that "[d]espite the absence of affidavits or other evidentiary support for the [m]otion or a showing of good cause for the absence of proof, the [c]ourt will address each of Harris'[s] assignments of error in an abundance of caution."

¶8.    As to Harris's claims that he received ineffective assistance of counsel, the trial court explained that "Harris contends his counsel was ineffective because he failed to object to a defective indictment, failed to investigate the underlying facts of the case, including Harris'[s] claim of self-defense, and he allowed Harris to plead guilty with no factual basis to support the plea." The trial court found that "Harris'[s] attorney performed competently and Harris has failed in showing, had he completed his trial, that the outcome would have been different." The trial court also found that "Harris'[s] attorney negotiated with the State to reduce the capital murder charge to murder which included the opportunity for release and significantly reduced time in prison."

¶9.    The trial court also found no merit to Harris's claim that no factual basis existed for the trial court to accept his guilty plea, explaining that "[d]uring the plea colloquy, Harris stated he was pleading guilty because he was guilty and for no other reason. He admitted to shooting both victims." The trial court also found that "[t]he State was prepared to prove the robbery element of the capital murder charge with the store surveillance video that showed Harris leaving the crime scene with the gun he used to kill one victim and permanently injure the other."

¶10.   Regarding Harris's claim that his plea was involuntary, the trial court found that "Harris was afforded a full explanation by the [c]ourt of the charges against him, the rights that he was waiving by pleading guilty, and the consequences of his plea. The fact that Harris pled guilty because he feared a harsher sentence does not render his plea involuntary."

5

¶11.    As to Harris's claim that his indictment was defective because it contained only the statute for robbery, not capital murder, and thus "deprived the [trial] [c]ourt of subject matter jurisdiction[,]" the trial court found that "[t]his issue is without merit as the indictment clearly contains the correct capital murder statute."

¶12.    The trial court also found no merit to Harris's final assignment of error—that the trial court had improperly participated in plea discussions. The trial court explained that "[o]ther than Harris'[s] own bare assertion, there is nothing in his pleadings or the record to support such a contention."

¶13.    On May 6, 2019, Harris filed his notice of appeal from the trial court's order denying his PCR motion.[3]

## STANDARD OF REVIEW

¶14.    "When reviewing a trial court's denial or dismissal of a [PCR motion], we will only disturb the trial court's factual findings if they are clearly erroneous; however, we review legal conclusions under a de novo standard of review." *Chapman v. State*, 167 So. 3d 1170, 1172 (¶3) (Miss. 2015).

---

[3] The record reflects that Harris filed a motion requesting permission to file an out-of-time appeal, which the trial court granted. The trial court's order granting Harris's motion reflects that Harris attached a copy of the envelope from the trial court containing the order denying Harris's PCR motion. The envelope reflects that the South Mississippi Correctional Institution personnel received it on April 18, 2019. Harris then filed his notice of appeal on May 6, 2019. The trial court accordingly granted Harris's motion for permission to proceed out of time, explaining that the delay was based on the fact that Harris did not receive the order denying his PCR motion in a timely fashion and therefore could not file his notice of appeal within thirty days after the entry of the order.

**DISCUSSION**

¶15. On appeal, Harris argues that the trial court erred in denying his PCR motion. In support of his argument, Harris lists the same assignments of error and arguments from his PCR motion, and he additionally asserts that he was entitled to discovery and expansion of the record. The State maintains that Harris's PCR motion is time-barred and successive-writ barred.

¶16. Harris filed his PCR motion on May 21, 2018, approximately seven years after he pleaded guilty. Because Harris failed to file his PCR motion within three years after the entry of the judgment of conviction, the trial court properly found that Harris's motion is time-barred. *See* Miss. Code Ann. § 99-39-5(2) (In the case of a guilty plea, "[a] motion for relief under this article shall be made . . . within three (3) years after entry of the judgment of conviction.").

¶17. The Uniform Post-Conviction Collateral Relief Act (UPCCRA) also prohibits the filing of a successive motion: "[A] motion filed after entry of a final judgment that asserts the same issues is procedurally barred as [successive]." *McComb v. State*, 135 So. 3d 928, 931 (¶10) (Miss. Ct. App. 2014); Miss. Code Ann. § 99-39-23(6) (Rev. 2015). As stated, Harris's first PCR motion was a request to clarify his sentence based on his belief that the circuit clerk's docket summary revealed that the crime he had been indicted for, and the sentence he received, had been reduced. *Harris*, 230 So. 3d at 720 (¶3). Harris's second PCR motion, which is currently before this Court, sets forth various assignments of error

relating to his guilty plea, counsel, and indictment. However, because Harris could have raised these allegations in his first PCR motion, they are "barred by ordinary principles of res judicata, which bar 'all issues that might have been (or could have been) raised and decided in the initial suit, plus all issues that were actually decided in the first cause of action.'" *Bosarge v. State*, 141 So. 3d 24, 26 (¶6) (Miss. Ct. App. 2014) (quoting *Little v. V & G Welding Supply Inc.*, 704 So. 2d 1336, 1337-38 (¶8) (Miss. 1997)). This Court has explained that "[s]ince successive motions are not allowed, 'a person who requests post[]conviction relief is obligated to place before the court all claims known to him and/or of which he should have had knowledge.'" *Nichols v. State*, 265 So. 3d 1239, 1241 (¶8) (Miss. Ct. App. 2018) (quoting *Salter v. State*, 184 So. 3d 944, 951 (¶24) (Miss. Ct. App. 2015)), *cert. denied*, 265 So. 3d 181 (Miss. 2019). "The failure to do so results in a loss of his claims for a second or successive petition." *Id*. We therefore find that Harris's PCR motion is also successive-writ barred.

¶18. Harris argues that his PCR motion is excepted from the time-bar and successive-writ bar because he raises errors affecting his fundamental rights. This Court recognizes that "errors affecting fundamental constitutional rights are excepted from the procedural bars." *Id*. (quoting *Rowland v. State*, 42 So. 3d 503, 507 (¶12) (Miss. 2010)). "[F]our fundamental-rights exceptions have been expressly found to survive procedural bars: (1) the right against double jeopardy; (2) the right to be free from an illegal sentence; (3) the right to due process at sentencing; and (4) the right not to be subject to ex post facto laws." *Id*. (quoting *Carter*

8

*v. State*, 203 So. 3d 730, 731 (¶7) (Miss. Ct. App. 2016)). This Court has additionally recognized that "the due-process right not to stand trial or be convicted while incompetent is a fundamental right not subject to the procedural bars of the Mississippi postconviction-relief statutes." *Brown v. State*, 198 So. 3d 325, 330 (¶19) (Miss. Ct. App. 2015) (citing *Smith v. State*, 149 So. 3d 1027, 1031 (¶8) (Miss. 2014), *overruled on other grounds* by *Pitchford v. State*, 240 So. 3d 1061, 1070 (¶49) (Miss. 2017)). However, "merely asserting a constitutional-right violation is insufficient to overcome the procedural bars[,] . . . there must at least appear to be some basis for the truth of the claim of a fundamental-constitutional-rights violation." *Nichols*, 265 So. 3d at 1241 (¶10) (citation omitted). Harris, as the PCR movant, "bears the burden of demonstrating that he has met an exception." *McComb*, 135 So. 3d at 932 (¶13).

¶19. In addition to the five fundamental-rights exceptions listed above, we recognize that under "extraordinary circumstances," ineffective assistance of counsel can also constitute an exception to the procedural bars of the UPCCRA. *Brown v. State*, 187 So. 3d 667, 670-71 (¶7) (Miss. Ct. App. 2016) (quoting *Chapman v. State*, 167 So. 3d 1170, 1173-74 (¶¶10-13) (Miss. 2015)). To prevail on a claim for ineffective assistance of counsel, Harris must prove that (1) "counsel's performance was deficient" and that (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Overcoming the procedural bars "requires more than a party's own affidavit or mere assertions made within his brief." *McCoy v. State*, 111 So. 3d 673, 679 (¶21) (Miss. Ct. App. 2012). "A

9

defendant's claims of ineffective assistance of counsel must be pled with specificity, and the claim must be supported by affidavits other than his own." *Moore v. State*, 248 So. 3d 845, 851 (¶15) (Miss. Ct. App. 2017) (internal quotation mark omitted). When the PCR movant offers only his own affidavit in support of his claim, and the affidavit "is contradicted by unimpeachable documents in the record, an evidentiary hearing is not required." *Lackaye v. State*, 166 So. 3d 560, 564 (¶12) (Miss. Ct. App. 2015) (citing *Gable v. State*, 748 So. 2d 703, 706 (¶12) (Miss. 1999)).

¶20. Harris argues that because he has shown that his counsel's performance was so deficient and so prejudicial that Harris's constitutional rights were violated, he has therefore overcome his burden of demonstrating that he has met an exception to the procedural bars. Harris also asserts that all of the issues he raised in his PCR motion fall under the umbrella of an ineffective-assistance-of-counsel claim. Harris specifically asserts that his trial attorneys were ineffective for (1) allowing Harris to plead guilty despite the lack of a factual basis for the plea; (2) allowing the trial court to participate in the plea discussion; (3) failing to object to the defective indictment; and (4) failing to investigate key evidence in the case showing that Harris acted in self-defense.

¶21. As acknowledged, the record reflects that the instant PCR motion is time-barred and successive-writ barred. However, "[w]here a petitioner asserts a fundamental right, the courts must address the merits of the PCR petition regardless of procedural bars." *Salter*, 184 So. 3d at 950 (¶21). We now turn to examine whether Harris provided sufficient

10

evidence to overcome the procedural bars.

¶22. Harris first argues that because he was denied effective assistance of counsel, he involuntarily entered his guilty plea. In support of his claim that his guilty plea was not voluntarily or intelligently made, Harris states that from the time of his arraignment until the time he entered a guilty plea (approximately eleven months), he wrote thirty-eight letters to the trial court complaining about his public defenders; his personal safety, health, and welfare; and the "deplorable conditions" at the Jackson County detention center. Harris maintains that these letters show that Harris's "plea of guilty was based on ignorance and incomprehension" as well as "coercion and terror."

¶23. However, Harris's plea petition and the transcript of his guilty plea hearing do not support his assertion that his plea was involuntary. Rather, Harris's plea petition reflects that he "knowingly, intelligently, understandingly, freely[,] and voluntarily" entered his plea of guilty to the charges of murder and aggravated assault. During his plea hearing, Harris informed the trial court, under oath, that he had reviewed his plea petition with his attorney and that he understood it. Harris also swore that he had not been threatened or promised anything in exchange for his guilty plea. When the trial court asked whether he was satisfied with the services of his attorney, Harris responded, "I'm accepting this plea. I feel like I have no alternative." The trial court then asked, "Do you think these attorneys have properly advised you in your best interests?" Harris answered, "As far as the plea, yeah. Yes sir." After questioning Harris and his attorneys, the trial court accordingly found that Harris's

guilty plea was "freely, voluntarily[,] and intelligently" made and accepted the plea. Based on our review, we also find that Harris's guilty plea was knowingly, intelligently, and voluntarily made.

¶24. Harris next claims that his counsel was ineffective for allowing him to plead guilty despite no factual basis existing for the entry of his guilty plea. In support of his claim, Harris asserts that "at no time during the guilty plea hearing . . . did Harris admit to any elements of robbery." Harris admits, however, that he told the trial court, "I think I shot Hall and Williams." Harris also acknowledges that the surveillance video from the incident shows him shooting Hall and Williams, but he argues that the video does not contain audio of the conversation that occurred between himself, Hall, and Williams and that the video does not show Harris committing a robbery. Harris asserts that the surveillance video could instead be used to show that Harris acted in self-defense by shooting Hall and Williams. Harris claims that "manslaughter is the only crime" with which he could be charged.

¶25. Uniform Rule of Circuit and County Court Practice 8.04(A)(3) formerly provided that "[b]efore the trial court may accept a plea of guilty, the court must determine that the plea is voluntarily and intelligently made and that there is a factual basis for the plea." URCCC 8.04(A)(3).[4] We recognize that a factual basis can be established through various means, including "a statement of the prosecutor, the testimony of live witnesses, and prior

---

[4] Effective July 1, 2017, the Mississippi Rules of Criminal Procedure replaced the Uniform Rules of Circuit and County Court Practice with regard to criminal procedure. At the time of Harris's guilty pleas, however, the former rules remained in effect.

12

proceedings, as well as an actual admission by the defendant." *Timmons v. State*, 176 So. 3d 168, 172 (¶13) (Miss. Ct. App. 2015). As stated, after opening statements in his trial, Harris withdrew his plea of not guilty. That same day, he entered a plea of guilty. During opening statements, the State set forth that it was prepared to prove the elements of Harris's capital murder charge, including the elements of the underlying charge of robbery, as well as the elements of aggravated assault. The State explained to the jury that the store surveillance video showed Harris shooting Hall and Williams, and then leaving the crime scene with Williams's gun, which Harris used to kill Hall and permanently injure Williams.

¶26. However, in exchange for pleading guilty, Harris's charges of capital murder, where the underlying offense was robbery, and aggravated assault were reduced to murder and aggravated assault. The plea petition and plea hearing transcript reflect that Harris pleaded guilty to and was sentenced for murder and aggravated assault, and not robbery. As to the charges of murder and aggravated assault, Harris admitted at the plea hearing that he shot Hall and Williams. Harris admitted to the trial court that he was pleading guilty because of his guilt and for no other reason. Harris stated he "picked up a gun and used it" on Williams and Hall, and he acknowledged that as a result of his actions, Hall is dead, and Williams is in a wheelchair. After our review, we find that a sufficient factual basis existed for the trial court to accept Harris's guilty plea.

¶27. Harris also claims that his counsel's assistance was ineffective for failing to object to the defective indictment. Harris argues that Count I of the indictment did not adequately

define capital murder; specifically, the indictment allegedly failed to identify the section and subsection of the capital murder statute under which Harris was charged. Harris states that his indictment only contained a definition of section Mississippi Code Annotated 97-3-73 (Rev. 2006), which defines robbery. Harris asserts that the trial court possessed subject matter jurisdiction to determine whether Harris's indictment was defective.

¶28. The heading of Harris's multi-count indictment reflects that Harris was charged with the following: (1) Count I: capital murder, in violation of Mississippi Code Annotated section 97-3-19(2)(e) (Rev. 2006), and (2) Count II: aggravated assault, in violation of Mississippi Code Annotated section 97-3-7(2)(b) (Supp. 2009). As to count I, the indictment charged that Harris, while

> in Jackson County, Mississippi, on or about December 26, 2009, did then and there willfully, unlawfully and feloniously, without the authority of law, and with or without any design to effect the. death, kill and murder Sema Hall, a human being, while in the commission of the felony crime of [r]obbery, as defined by [s]ection 97-3-73[.]

¶29. This Court has held that "the purpose of an indictment is to put the defendant on notice of the charge against him." *Baker v. State*, 95 So. 3d 692, 694 (¶12) (Miss. Ct. App. 2012). "[A]n indictment gives sufficient notice so long as its words substantially describe the crime within the statute." *Id*. (citing *Winters v. State*, 52 So. 3d 1172, 1174-75 (¶7) (Miss. 2010)). In *Baker*, this Court held that "the indictment was not defective because its heading clearly stated the crime and code section." In the case before us, we find that because Harris's indictment "clearly stated the crime and code section," the indictment

14

provided him with sufficient notice that he was being charged with capital murder and aggravated assault.

¶30. Harris next maintains that his counsel's assistance was ineffective for allowing the trial court to participate in the plea discussion. However, this Court has held that once a defendant notifies the trial court "of his intent to plead guilty, it [is] the duty of the trial court to address him personally and to inquire and determine whether he understood the nature and consequences of the guilty pleas. It must also advise him of the maximum and minimum penalties provided by law." *Mitchell v. State*, 795 So. 2d 620, 622 (¶6) (Miss. Ct. App. 2001) (citing URCCC 8.04).[5] The trial court must also address the defendant personally "to inquire and determine" that he understands "that by pleading guilty []he waives his/her constitutional rights of trial by jury, the right to confront and cross-examine adverse witnesses, and the right against self-incrimination." *Dixon v. State*, 52 So. 3d 1254, 1256-57 (¶11) (Miss. Ct. App. 2011) (quoting URCCC 8.04(c)). Our review of the plea hearing transcript reflects that the trial court properly advised and made these inquiries of Harris.

¶31. Harris also maintains that his counsel's assistance was ineffective because he failed to adequately investigate the evidence in this case. Harris asserts that the surveillance video of the crime would have shown that he acted in self-defense. Harris also claims that if his counsel had subpoenaed the video footage, he would not have pleaded guilty and he would

---

[5] As stated, the Uniform Rules of Circuit and County Court Practice were in effect at the time Harris entered his guilty plea.

have insisted on going to trial. However, our review of the record shows that Harris failed to provide any evidence, other than his own assertion, that supports this claim. This Court has held that where the defendant "failed to offer any other evidence, aside from his own assertions, of his counsel's deficient performance[,]" the defendant "provided insufficient evidence to support a finding of ineffective assistance." *Vitela v. State*, 183 So. 3d 104, 108 (¶14) (Miss. Ct. App. 2015). Furthermore, as stated, the trial transcript reflects that the State was prepared to use the surveillance video at trial to make its case for capital murder and aggravated assault.

¶32. Finally, Harris asserts that he is entitled to discovery and expansion of the record. On the same day he filed his PCR motion, Harris also filed a motion for discovery and expansion of the record. In his motion, Harris sought to obtain the transcript of the trial transcript, plea hearing transcript, "and other documents related to the case," including the thirty-eight letters he wrote to the trial court and the surveillance video footage of the crime. Harris argues that the documents he requested "would have established that Harris['s] guilty plea was not intelligently and voluntarily made," that no factual basis existed for his guilty plea, and that he received ineffective assistance of counsel.

¶33. The record reflects that the trial court denied Harris's PCR motion without ruling on Harris's motion for discovery and expansion of the record. We find that "[b]y failing to pursue a hearing or ruling on the motion from the trial court, [Harris] effectively abandoned the motion and waived this issue for appeal." *Smith v. State*, 986 So. 2d 290, 296 (¶17)

16

(Miss. 2008). Furthermore, the record before us contains the transcript from Harris's trial[6] and plea hearing, as well as Harris's plea petition. The record also contains numerous letters written by Harris and mailed to the public defender's office, the Mississippi Bar Association, and the trial court. These letters appear to be attachments to Harris's PCR motion. After reviewing these documents, we find that they do not support Harris's PCR claims.

¶34. As stated, "[u]nder 'extraordinary circumstances,' ineffective assistance of counsel can constitute an exception to the [procedural bars]." *Morales v. State*, 291 So. 3d 363, 369 24 (Miss. Ct. App. 2019), *cert. denied*, 289 So. 3d 310 (Miss. 2020). After our review of the record, we find that Harris failed to present any "extraordinary circumstances" that would constitute an exception to the procedural bars. *See id*. Although Harris did attach numerous exhibits to his PCR motion—including police reports from the crime; his indictment; the trial court docket; letters that he sent to the trial court, public defender's office, and Mississippi Bar Association; and the order denying Harris's motion to quash his indictment—we find that none of these documents provides evidentiary support for his claim of ineffective assistance of counsel. *See Moore*, 248 So. 3d at 851 (¶15) ("A defendant's claims of ineffective assistance of counsel must be pled with specificity, and the claim must be supported by affidavits other than his own."). Procedural bar notwithstanding, we also find no merit to Harris's PCR motion, as his claims are contradicted by our review of the record.

---

[6] As explained, after opening statements, Harris decided to withdraw his not guilty plea and enter a plea of guilty.

Therefore, we affirm the judgment of the trial court.

¶35.    **AFFIRMED.**

   **WILSON, P.J., GREENLEE, WESTBROOKS, McDONALD AND McCARTY, JJ., CONCUR.  BARNES, C.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  LAWRENCE, J., NOT PARTICIPATING.**